[L. A. No. 27754. In Bank. July 1, 1966.]

LAURANCE A. SEE, Plaintiff and Appellant, v. ELIZA-
BETH LEE SEE, Defendant and Appellant.

Crowley & Goffin, Arthur J. Crowley and Ron Swearinger for Plaintiff and Appellant.

Stanley N. Gleis for Defendant and Appellant.

TRAYNOR, C. J.—Plaintiff Laurance A. See and cross-complainant Elizabeth Lee See appeal from an interlocutory judgment that grants each a divorce. Laurance attacks the finding that he was guilty of extreme cruelty, the granting of a divorce to Elizabeth, and the award to her of permanent alimony of $5,400 per month. Elizabeth attacks the finding that there was no community property at the time of the divorce. Neither party contests the provisions regarding custody and support of the three minor children.

The parties were married on October 17, 1941, and they separated about May 10, 1962. Throughout the marriage they were residents of California, and Laurance was employed by a family-controlled corporation, See's Candies, Inc. For most of that period he also served as president of its wholly-owned subsidiary, See's Candy Shops, Inc. In the twenty-one years of the marriage he received more than $1,000,000 in salaries from the two corporations.

The trial court did not err in finding that plaintiff's actions constituted extreme cruelty. That finding was made upon consideration of all the circumstances of the case in light of the "intelligence, refinement, and delicacy of sentiment of the complaining party" (*Nunes* v. *Nunes,* 62 Cal.2d 33, 36 [41 Cal.Rptr. 5, 396 P.2d 37]) and is supported by substantial

evidence. ■ When repeated instances of offensive conduct are offered to establish cruelty, it is not necessary that each be corroborated. ■ The determination of the sufficiency of corroborating evidence is within the sound discretion of the trial court. (*Id.* at p. 37.)

■ Nor did the trial court abuse its discretion in awarding alimony to Elizabeth. Alimony may be awarded to either party even though a divorce is granted to both. (*Mueller* v. *Mueller,* 44 Cal.2d 527, 530 [282 P.2d 869] ; *DeBurgh* v. *DeBurgh,* 39 Cal.2d 858, 874 [250 P.2d 598].) We do not reach plaintiff's contention that the alimony award was excessive. Since that part of the judgment must be reversed for reasons that appear hereafter, the considerations that prompted the amount of the award may no longer be relevant.

Laurance had a personal account on the books of See's Candies, Inc., denominated Account 13. Throughout the marriage his annual salary from See's Candies, Inc., which was $60,000 at the time of the divorce, was credited to this account and many family expenses were paid by checks drawn on it. To maintain a credit balance in Account 13, Laurance from time to time transferred funds to it from an account at the Security First National Bank, hereafter called the Security Account.

The funds deposited in the Security Account came primarily from Laurance's separate property. On occasion he deposited his annual $15,000 salary from See's Candy Shops, Inc. in that account as a "reserve against taxes" on that salary. Thus there was a commingling of community property and separate property in both the Security Account and Account 13. Funds from the Security Account were sometimes used to pay community expenses and also to purchase some of the assets held in Laurance's name at the time of the divorce proceedings.

Over Elizabeth's objection, the trial court followed a theory advanced by Laurance that a proven excess of community expenses over community income during the marriage establishes that there has been no acquisition of property with community funds.

Such a theory, without support in either statutory or case law of this state, would disrupt the California community property system. It would transform a wife's interest in the community property from a "present, existing and equal interest" as specified by Civil Code section 161a, into an inchoate expectancy to be realized only if upon termination of

the marriage the community income fortuitously exceeded community expenditures. It would engender uncertainties as to testamentary and *inter vivos* dispositions, income, estate and gift taxation, and claims against property.

█ The character of property as separate or community is determined at the time of its acquisition. (*In re Miller*, 31 Cal.2d 191, 197 [187 P.2d 722]; *Siberell* v. *Siberell*, 214 Cal. 767, 770 [7 P.2d 1003]; *Bias* v. *Reed*, 169 Cal. 33, 42 [145 P. 516]. █ If it is community property when acquired, it remains so throughout the marriage unless the spouses agree to change its nature or the spouse charged with its management makes a gift of it to the other. (*Odone* v. *Marzocchi*, 34 Cal.2d 431, 435 [211 P.2d 297, 212 P.2d 233, 17 A.L.R.2d 1109]; *Mears* v. *Mears*, 180 Cal.App.2d 484, 499 [4 Cal.Rptr. 618].)

█ Property acquired by purchase during a marriage is presumed to be community property, and the burden is on the spouse asserting its separate character to overcome the presumption. (*Estate of Niccolls*, 164 Cal. 368 [129 P. 278]; *Thomasset* v. *Thomasset*, 122 Cal.App.2d 116, 123 [264 P.2d 626]. █ The presumption applies when a husband purchases property during the marriage with funds from an undisclosed or disputed source, such as an account or fund in which he has commingled his separate funds with community funds. (*Estate of Neilson*, 57 Cal.2d 733, 742 [22 Cal.Rptr. 1, 371 P.2d 745]. █ He may trace the source of the property to his separate funds and overcome the presumption with evidence that community expenses exceeded community income at the time of acquisition. If he proves that at that time all community income was exhausted by family expenses, he establishes that the property was purchased with separate funds. (*Estate of Neilson, supra,* at p. 742; *Thomasset* v. *Thomasett, supra,* at p. 127.) █ Only when, through no fault of the husband, it is not possible to ascertain the balance of income and expenditures at the time property was acquired, can recapitulation of the total community expenses and income throughout the marriage be used to establish the character of the property. Thus, in *Estate of Ades,* 81 Cal.App.2d 334 [184 P.2d 1], relied on by plaintiff, this method of tracing was used to establish that assets discovered after the husband's death had been acquired before the marriage. The question was not presented as to the balance of income and expenditures at any specific time during the marriage. In *Estate of Arstein,* 56 Cal.2d 239 [14 Cal.Rptr. 809, 364 P.2d 33], relied on by plaintiff, the husband's skill

784

and industry in managing his separate property was the source of all community income during the marriage. Not until the trial could a determination be made as to what proportion of the total income was attributable to the husband's skill and industry. In *Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d 116, the court made clear that the time of acquisition of disputed property is decisive. "An accountant testified that at the time the various items adjudged to be defendant's separate property were purchased, there were no community funds available. . . . The evidence [shows] . . . that at the time the property was purchased the community funds had been exhausted. . . ." (*Id.* at p. 127.) Anything to the contrary in *Patterson* v. *Patterson,* 242 Cal.App.2d —— [51 Cal.Rptr. 339], is disapproved.

 A husband who commingles the property of the community with his separate property, but fails to keep adequate records cannot invoke the burden of record keeping as a justification for a recapitulation of income and expenses at the termination of the marriage that disregards any acquisitions that may have been made during the marriage with community funds. If funds used for acquisitions during marriage cannot otherwise be traced to their source and the husband who has commingled property is unable to establish that there was a deficit in the community accounts when the assets were purchased, the presumption controls that property acquired by purchase during marriage is community property. The husband may protect his separate property by not commingling community and separate assets and income. Once he commingles, he assumes the burden of keeping records adequate to establish the balance of community income and expenditures at the time an asset is acquired with commingled property.

The trial court also followed the theory that a husband who expends his separate property for community expenses is entitled to reimbursement from community assets. This theory likewise lacks support in the statutory or case law of this state. A husband is required to support his wife and family. (Civ. Code, §§ 155, 196, 242). Indeed, husband and wife assume mutual obligations of support upon marriage. These obligations are not conditioned on the existence of community property or income. The duty to support imposed upon husbands by Civil Code section 155 and upon wives by Civil Code section 176 requires the use of separate property of the parties when there is no community property. There is no right to reimbursement under the statutes.

 Likewise a husband who elects to use his separate property instead of community property to meet community expenses cannot claim reimbursement. In the absence of an agreement to the contrary, the use of his separate property by a husband for community purposes is a gift to the community. The considerations that underlie the rule denying reimbursement to either the community or the husband's separate estate for funds expended to improve a wife's separate property (*Dunn* v. *Mullan*, 211 Cal. 583, 589 [296 P. 604, 77 A.L.R. 1015]) apply with equal force here. The husband has both management and control of the community property (Civ. Code, §§ 172, 172a) along with the right to select the place and mode of living. (Civ. Code, § 156.) His use of separate property to maintain a standard of living that cannot be maintained with community resources alone no more entitles him to reimbursement from after-acquired community assets than it would from existing community assets.

 Nor can we approve the recognition of an exception, a right to reimbursement of separate funds expended for community purposes at a time when a community bank account is exhausted. (*Kenney* v. *Kenney*, 128 Cal.App.2d 128, 136 [274 P.2d 951]; *Thomasset* v. *Thomasett, supra,* 122 Cal.App.2d 116, 126; *Hill* v. *Hill,* 82 Cal.App.2d 682, 698 [187 P.2d 28]; cf. *Mears* v. *Mears, supra,* 180 Cal.App.2d 484, 508.) Although this exception was restricted to recovery from the same community account when replenished, there is no statutory basis for it, and the court that first declared it cited no authority to support it. Such an exception conflicts with the longstanding rule that a wife who uses her separate funds in payment of family expenses without agreement regarding repayment cannot require her husband to reimburse her. (*Ives* v. *Connacher,* 162 Cal. 174, 177 [121 P. 394]; *Blackburn* v. *Blackburn,* 160 Cal.App.2d 301, 304 [324 P.2d 971]; *Thomson* v. *Thomson,* 81 Cal.App. 678 [254 P. 644]; cf. *Haseltine* v. *Haseltine,* 203 Cal.App.2d 48 [21 Cal.Rptr. 238].) Nor is a wife required to reimburse her husband in the converse situation, particularly since the husband has the control and management of community expenses and resources. The basic rule is that the party who uses his separate property for community purposes is entitled to reimbursement from the community or separate property of the other only if there is an agreement between the parties to that effect. To the extent that they conflict with this rule *Mears* v. *Mears, supra,* 180 Cal.App.2d 484; *Kenney* v. *Kenney, supra,* 128 Cal.App.2d

128; *Thomasset* v. *Thomasset, supra,* 122 Cal.App.2d 116; and *Hill* v. *Hill,* 82 Cal.App.2d 682 [187 P.2d 28], are disapproved.

Elizabeth makes several additional assignments of error relative to specific assets in existence on the dissolution of the marriage but not found to be community property. The record does not afford a basis for determining the nature of these assets, with the exception of Laurance's interest in the profit-sharing trusts of the two See corporations. His interest in these funds arose by virtue of his employment and was irrevocable at the time of the divorce. It was therefore unquestionably a community property asset.

Plaintiff has not met his burden of proving an excess of community expenses over community income at the times the other assets purchased during the marriage were acquired. The part of the judgment finding them to be his separate property is therefore reversed. Since the property issues were tried on the theory that the nature of the property could be determined by proving total community income and expenditures and since the parties may have additional evidence that would otherwise have been presented, plaintiff's failure to overcome the presumption that the assets are community property is not conclusive. We therefore remand the case for retrial of the property issues. Since the court considered the lack of community property a significant factor in determining the amount of the alimony award, that part of the judgment is also reversed.

The judgment is affirmed in all other respects. Elizabeth shall recover her costs on both appeals.

McComb, J., Peters, J., Tobriner, J., Peek, J., Mosk, J., and Burke, J., concurred.