[S.F. No. 22786. In Bank. Nov. 4, 1971.]

A. WALTER BEAM, Plaintiff and Respondent, v.
BANK OF AMERICA, as Executor, etc., Defendant and Appellant.

## COUNSEL

Kerner, Colangelo & Imlay, Marvin J. Colangelo and Warner B. Berry for Defendant and Appellant.

Goth, Dennis & Aaron and James M. Dennis for Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—Mrs. Mary Beam, defendant in this divorce action, appeals from an interlocutory judgment awarding a divorce to both husband and wife on grounds of extreme cruelty.[1] The trial court determined that the only community property existing at the time of trial was a promissory note for $38,000, and, upon the husband's stipulation, awarded this note to the wife; the court found all other property to be the separate property of the party possessing it. The court additionally awarded Mrs. Beam $1,500 per month as alimony and granted custody of the Beam's two minor children to both parents, instructing the husband to pay $250 per month for the support of each child so long as the child remained within the wife's care.

On this appeal, Mrs. Beam attacks the judgment primarily on the grounds that the trial court (1) failed adequately to compensate the community for income attributable to the husband's skill, efforts and labors expended in the handling of his sizable separate estate during the marriage, and (2) erred in suggesting that community living expenses, paid from the income of the husband's separate estate, should be charged against community income in determining the balance of community funds. In addition, the wife challenges the court's categorization of several

---

[1] Mrs. Beam died subsequent to the filing of this appeal and the Bank of America, executor of her estate, has been substituted in her place. For convenience and clarity, however, we refer to the wife as the appellant.

specific assets as separate property of her husband. For the reasons discussed below, we have concluded that substantial precedent and evidence support the various conclusions under attack; thus we conclude that the judgment must be affirmed.

## I. *The Facts.*

Mr. and Mrs. Beam were married on January 31, 1939; the instant divorce was granted in 1968, after 29 years of marriage. Prior to and during the early years of the marriage, Mr. Beam inherited a total of $1,629,129 in cash and securities, and, except for brief and insignificant intervals in the early 1940's, he was not employed at all during the marriage but instead devoted his time to handling the separate estate and engaging in private ventures with his own capital. Mr. Beam spent the major part of his time studying the stock market and actively trading in stocks and bonds; he also undertook several real estate ventures, including the construction of two hotel resorts, Cabana Holiday I at Piercy, California, and Cabana Holiday II at Prunedale, California. Apparently, Mr. Beam was not particularly successful in these efforts, however, for, according to Mrs. Beam's own calculations, over the lengthy marriage her husband's total estate enjoyed only a very modest increase to $1,850,507.33.

Evidence introduced at trial clearly demonstrated that the only moneys received and spent by the parties during their marriage were derived from the husband's separate estate; throughout the 29 years of marriage Mrs. Beam's sole occupation was that of housewife and mother (the Beams have four children). According to the testimony of both parties, the ordinary living expenses of the family throughout the marriage amounted to $2,000 per month and, in addition, after 1960, the family incurred extraordinary expenses (for travel, weddings, gifts) of $22,000 per year. Since the family's income derived solely from Mr. Beam's separate estate, all of these household and extraordinary expenses were naturally paid from that source.

During the greater part of the marriage (1946 to 1963) the Beams resided in a home on Spencer Lane in Atherton, California. In 1963 the family sold the Spencer Lane house and acquired a smaller residence in Atherton, on Selby Lane. This home was sold in 1966 for a cash down payment, which was apparently divided between the parties, and for a promissory note in the sum of $38,000, payable in monthly installments of $262.56. The trial court concluded that this note was community property but, upon Mr. Beam's stipulation, awarded the entire proceeds of the note to the wife.

On this appeal, Mrs. Beam of course does not question the disposition of the promissory note, but does attack the trial court's conclusion that this asset was the only community property existing at the time of the divorce. Initially, and most importantly, the wife contends that the trial court erred in failing to find any community property resulting from the industry, efforts and skill expended by her husband over the 29 years of marriage. We address this issue first.

2. *The trial court did not err in concluding that there was no net community property accumulated during the marriage from the earnings of Mr. Beam's separate property.*

Section 5108 of the Civil Code provides generally that the profits accruing from a husband's separate property are also separate property.[2] Nevertheless, long ago our courts recognized that, since income arising from the husband's skill, efforts and industry is community property, the community should receive a fair share of the profits which derive from the husband's devotion of more than minimal time and effort to the handling of his separate property. (*Pereira* v. *Pereira* (1909) 156 Cal. 1, 7 [103 P. 488]; see *Millington* v. *Millington* (1968) 259 Cal. App.2d 896, 907-908 [67 Cal.Rptr. 128] and cases cited therein.) Furthermore, while this principle first took root in cases involving a husband's efforts expended in connection with a separately owned farm or business (e.g., *Pereira* v. *Pereira* (1909) 156 Cal. 1 [103 P. 488]; *Huber* v. *Huber* (1946) 27 Cal.2d 784, 792 [167 P.2d 708]; *Van Camp* v. *Van Camp* (1921) 53 Cal.App. 17, 29 [199 P. 885]; *Stice* v. *Stice* (1947) 81 Cal. App.2d 792, 796 [185 P.2d 402]) our courts now uniformly hold that "[a]n apportionment of profits is required not only when the husband conducts a commercial enterprise but also when he invests separate funds in real estate or securities. [Citations.]" (*Estate of Neilson* (1962) 57 Cal.2d 733, 740 [22 Cal.Rptr. 1, 371 P.2d 745]; see *Margolis* v. *Margolis* (1952) 115 Cal.App.2d 131, 135 [251 P.2d 396].) Without question, Mr. Beam's efforts in managing his separate property throughout the marriage were more than minimal (cf. *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 567-568 [63 Cal.Rptr. 13, 432 P.2d 709]; *Cozzi* v. *Cozzi* (1947) 81 Cal.App.2d 229, 232 [183 P.2d 739]; *Estate of Barnes* (1933) 128 Cal. App. 489, 492 [17 P.2d 1046]), and thus the trial court was compelled to determine what proportion of the total profits should properly be apportioned as community income.

---

[2]Section 5108 (formerly § 163) provides in relevant part: "All property owned by the husband before marriage and that acquired afterwards by gift, bequest, devise or descent, with the rents, issues and profits thereof, is his separate property."

Over the years our courts have evolved two quite distinct, alternative approaches to allocating earnings between separate and community income in such cases. One method of apportionment, first applied in *Pereira* v. *Pereira* (1909) 156 Cal. 1, 7 [103 P. 488] and commonly referred to as the *Pereira* approach, "is to allocate a fair return on the [husband's separate property] investment [as separate income] and to allocate any excess to the community property as arising from the husband's efforts." (*Estate of Neilson* (1962) 57 Cal.2d 733, 740 [22 Cal.Rptr. 1, 371 P.2d 745].)[3] The alternative apportionment approach, which traces its derivation to *Van Camp* v. *Van Camp* (1921) 53 Cal.App. 17, 27-28 [199 P. 885], is "to determine the reasonable value of the husband's services . . . , allocate that amount as community property, and treat the balance as separate property attributable to the normal earnings of the [separate estate]." (*Tassi* v. *Tassi* (1958) 160 Cal.App.2d 680, 690 [325 P.2d 872].)[4]

■ "In making such apportionment between separate and community property our courts have developed no precise criterion or fixed standard, but have endeavored to adopt that yardstick which is most appropriate and equitable in a particular situation . . . depending on whether the character of the capital investment in the separate property or the personal activity, ability, and capacity of the spouse is the chief contributing factor in the realization of income and profits [citations] . . . [Par.] In applying this principle of apportionment the court is not bound either to adopt a predetermined percentage as a fair return on business capital which is separate property [the *Pereira* approach] nor need it limit the community interest only to [a] salary fixed as the reward for a spouse's service [the *Van Camp* method] but may select [whichever] formula will achieve substantial justice between the parties. [Citations.]" (*Logan* v. *Forster* (1952) 114 Cal.App.2d 587, 599-600 [250 P.2d 730]; see *Millington* v. *Millington* (1968) 259 Cal.App.2d 896, 910 [67 Cal. Rptr. 128]; *Haldeman* v. *Haldeman* (1962) 202 Cal.App.2d 498, 505 [21 Cal.Rptr. 75]; *Tassi* v. *Tassi* (1958) 160 Cal.App.2d 680, 691 [325 P.2d 872].)

The trial court in the instant case was well aware of these apportionment formulas and concluded from all the circumstances that the *Pereira* ap-

[3]See, e.g., *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 564-565 [63 Cal.Rptr. 13, 432 P.2d 709]; *Estate of Arstein* (1961) 56 Cal.2d 239, 241 [14 Cal.Rptr. 809, 364 P.2d 33]; *Price* v. *Price* (1963) 217 Cal.App.2d 1, 7 [31 Cal.Rptr. 350]; *Haldeman* v. *Haldeman* (1962) 202 Cal.App.2d 498, 501-502 [21 Cal.Rptr. 75].

[4]See, e.g., *Gilmore* v. *Gilmore* (1955) 45 Cal.2d 142, 149-150 [287 P.2d 769]; *Huber* v. *Huber* (1946) 27 Cal.2d 784, 792 [167 P.2d 708]; *Strohm* v. *Strohm* (1960) 182 Cal.App.2d 53, 62 [5 Cal.Rptr. 884].

proach should be utilized. As stated above, under the *Pereira* test, community income is defined as the amount by which the actual income of the separate estate exceeds the return which the initial capital investment could have been expected to earn absent the spouse's personal management. ■ In applying the *Pereira* formula the trial court adopted the legal interest rate of 7 percent simple interest as the "reasonable rate of return" on Mr. Beam's separate property; although the wife now attacks this 7 percent simple interest figure as unrealistically high, at trial she introduced no evidence in support of any other more "realistic" rate of return and, as we stated explicitly in *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 565 [63 Cal.Rptr. 13, 432 P.2d 709], in the absence of such evidence "the trial court correctly adopted the rate of legal interest." (See also *Pereira* v. *Pereira* (1909) 156 Cal. 1, 11-12 [103 P. 488]; *Haldeman* v. *Haldeman* (1962) 202 Cal.App.2d 498, 505, fn. 1 [21 Cal.Rptr. 75].)

Testimony at trial indicated that, based upon this 7 percent simple interest growth factor, Mr. Beam's separate property would have been worth approximately 4.2 million dollars at the time of trial if no expenditures had been made during the marriage ■ Since Mrs. Beam's own calculations indicate that the present estate, plus all expenditures during marriage, would not amount to even 4 million dollars,[5] it appears that, under *Pereira,* the entire increase in the estate's value over the 29-year period would be attributable to the normal growth factor of the property itself and, thus, using this formula, all income would be designated as separate property. (See *Estate of Ney* (1963) 212 Cal.App.2d 891, 895 [28 Cal.Rptr. 442]; *Strohm* v. *Strohm* (1960) 182 Cal.App.2d 53, 61 [5 Cal.Rptr. 884]; cf. *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557, 567-568 [63 Cal.Rptr. 13, 432 P.2d 709].) In other words, under the *Pereira* analysis, none of the increased valuation of the husband's separate property during the marriage would be attributable to Mr. Beam's efforts, time or skill and, as a result, no community income would have been received and, consequently, no community property could presently be in existence.

The wife concedes that the use of the *Pereira* formula does sustain the trial court's conclusion that the present remainder of the husband's estate is entirely his separate property, but she contends that, under the circumstances, the *Pereira* test cannot be said to "achieve substantial justice

---

[5] According to defendant's figures, the value of Mr. Beam's estate at the time of trial was $1,850,507.33, ordinary living expenses over the marriage totalled $672,000, extraordinary expenses during this period equalled $176,000, and $610,126.93 was expended on "gifts." These calculations produce a gross total of $3,308,634.26.

between the parties" (*Logan* v. *Forester* (1952) 114 Cal.App.2d 587, 600 [250 P.2d 730]) and thus that the trial court erred in not utilizing the *Van Camp* approach. Although the trial judge did not explicitly articulate his reasons for employing the *Pereira* rather than the *Van Camp* analysis, we cannot under the facts before us condemn as unreasonable the judge's implicit decision that the modest increment of Mr. Beam's estate was more probably attributable to the "character of the capital investment" than to the "personal activity, ability and capacity of the spouse." (Cf. *Estate of Ney* (1963) 212 Cal.App.2d 891, 898 [28 Cal.Rptr. 442].) In any event, however, we need not decide whether the court erred in applying the *Pereira* test because we conclude, as did the trial court, that even under the *Van Camp* approach, the evidence sufficiently demonstrates that all the remaining assets in the estate constitute separate property.

Under the *Van Camp* test community income is determined by designating a reasonable value to the services performed by the husband in connection with his separate property. At trial Mrs. Beam introduced evidence that a professional investment manager, performing similar functions as those undertaken by Mr. Beam during the marriage, would have charged an annual fee of 1 percent of the corpus of the funds he was managing; Mrs. Beam contends that such a fee would amount to $17,000 per year (1 percent of the 1.7 million dollar corpus) and that, computed over the full term of their marriage, this annual "salary" would amount to $357,000 of community income. Mrs. Beam asserts that under the *Van Camp* approach she is now entitled to one-half of this $357,000.

Mrs. Beam's contention, however, overlooks the fundamental distinction between the total community *income* of the marriage, i.e., the figure derived from the *Van Camp* formula, and the community *estate* existing at the dissolution of the marriage. The resulting community estate is not equivalent to total community income so long as there are any community *expenditures* to be charged against the community income. ■ A long line of California decisions has established that "it is presumed that the expenses of the family are paid from community rather than separate funds [citations] [and] thus, in the absence of any evidence showing a different practice, the community earnings are chargeable with these expenses. [Citations.]" (*Estate of Neilson* (1962) 57 Cal.2d 733, 742 [22 Cal.Rptr. 1, 371 P.2d 745]; see e.g., *Title Ins. and Trust Co.* v. *Ingersoll* (1910) 158 Cal. 474, 492 [111 P. 360]; *Estate of Cudworth* (1901) 133 Cal. 462, 468 [65 P. 1041]; *Estate of Tompkins* (1932) 123 Cal.App. 670, 675 [11 P.2d 886].) This "family expense presumption" has been universally invoked by prior California decisions applying either the *Pereira* or *Van Camp* formula. (See, e.g., *Estate of Neilson* (1962) 57 Cal.2d 733, 742 [22 Cal.

Rptr. 1, 371 P.2d 745]; *Estate of Arstein* (1961) 56 Cal.2d 239 [14 Cal. Rptr. 809, 364 P.2d 33]; *Huber* v. *Huber* (1946) 27 Cal.2d 784, 792 [167 P.2d 708]; *Millington* v. *Millington* (1968) 259 Cal.App.2d 896, 909 [67 Cal.Rptr. 128]; *Haldeman* v. *Haldeman* (1962) 202 Cal.App.2d 498, 504-505 [21 Cal.Rptr. 75]; *Tassi* v. *Tassi* (1958) 160 Cal.App.2d 680, 692 [325 P.2d 872]; *Logan* v. *Forster* (1952) 114 Cal.App.2d 587, 601-602 [250 P.2d 730]; *Van Camp* v. *Van Camp* (1921) 53 Cal.App. 17, 25 [199 P. 885].) ■ Under these precedents, once a court ascertains the amount of community income, through either the *Pereira* or the *Van Camp* approach,, it deducts the community's living expenses from community income to determine the balance of the community property.

■ If the "family expense" presumption is applied in the present case, clearly no part of the remaining estate can be considered to be community property. Both parties testified at trial that the family's *normal* living expenses were $2,000 per month, or $24,000 per year, and if those expenditures are charged against the annual community income, $17,000 under the *Van Camp* accounting approach, quite obviously there was never any positive balance of community property which could have been built up throughout the marriage.[6] "When a husband devotes his services to and invests his separate property in an economic enterprise, the part of the profits or increment in value attributable to the husband's services must be apportioned to the community. If the amount apportioned to the community is less than the amount expended for family purposes, and if the presumption that family expenses are paid from community funds applies, all assets traceable to the investment are deemed to be the husband's separate property." (*Estate of Neilson* (1962) 57 Cal.2d 733, 742 [22 Cal.Rptr. 1, 371 P.2d 745].)

---

[6]The trial court determined that no net community property could be established under the *Van Camp* formula by deducting total community expenses *over the course of the entire marriage* from total community income, i.e., by using a "total recapitulation" approach. Although Mrs. Beam has not challenged this total recapitulation approach on appeal, some suggestion has arisen that the trial court's resort to this accounting method is contrary to this court's decision in *See* v. *See* (1966) 64 Cal.2d 778 [51 Cal.Rptr. 888, 415 P.2d 776]. Given the facts of the instant case, however, we need not decide whether the *See* decision, barring a husband's resort to a total recapitulation accounting in a case in which he has *voluntarily commingled separate and community income in a single account,* would also preclude total recapitulation under the instant circumstances, involving no conscious commingling. In the present case, so long as the family expense presumption is applicable, there could be no positive balance in the community estate even if the accounting procedures prescribed by *See* were utilized. The uncontradicted evidence of both parties establishes that even if the balance of the community estate were determined on a yearly, or indeed monthly, basis, rather than over the entire marriage, there was never a positive balance in the estate since community living expenses regularly exceeded the community earnings as computed under *Van Camp.* Thus, on this record, the application of *See's* accounting procedure would not alter the trial court's conclusion.

Although Mrs. Beam contends that this court's decision in *See* v. *See* (1966) 64 Cal.2d 778 [51 Cal.Rptr. 888, 415 P.2d 776], abrogated this long-established "family expense" presumption, we find nothing in that decision to support such a suggestion and we set forth our three bases for that conclusion. In the first place, if the court in *See* intended to overrule such a presumption in a case such as the instant one, in which the only community property is that which is theoretically created by application of the *Van Camp* formula, the court would have been compelled to overrule some eight cases cited *supra,* which relied upon that presumption in applying the *Pereira* or *Van Camp* formula.

In the second place, in *See,* unlike the instant case, we addressed inter alia a situation in which a husband *chose* to pay community living expenses from existing separate funds rather than from existing community property; the husband later claimed that he was entitled to *reimbursement* for such expenditures from after-acquired community assets. Under those circumstances, we held that " a husband who *elects* to use his separate property instead of community property to meet community expenses cannot claim reimbursement . . . . The basic rule is that the party who uses his separate property for community purposes is entitled to reimbursement from the community or separate property of the other only if there is an agreement between the parties to that effect." (Italics added.) (64 Cal.2d at p. 785.)

The discussion in *See* in no way constitutes a rejection of the rule that, in the absence of other evidence, living expenses are presumed to have been paid out of community property rather than separate property, as Mrs. Beam suggests. Instead *See* merely concludes that if a spouse *does* "elect" to expend his separate property on community expenses, such expenditure "is a gift to the community" (*id.*) for which the spouse is not entitled to reimbursement. The cited portion of the *See* opinion thus does not involve the question of determining which assets, community or separate, have been paid out for living expenses—the subject of the family expense presumption—but instead deals with the distinct issue of the effect of a husband's voluntary decision to expend his separate property, rather than community property, on the community's living expenses.

In the instant case, of course, Mr. Beam made no conscious choice to spend his separate property, rather than the "imputed" community property on the family's living expenses. Only by means of a formula now applied by the court do we divide Mr. Beam's income into theoretical "community" and "separate" portions; Beam could hardly draw upon a fictionalized separate source to pay family expenses. Thus our decision in *See* is simply not in point.

Finally, in another passage *See* makes it abundantly clear that the court intended to work no changes in the established family expense presumption. In an earlier section of the opinion, the court reviewed the consequences resulting from a husband's conscious commingling of his separate property and community property in a single account; the opinion declared that when assets were purchased from such a commingled account, the general presumption would prevail that any property acquired during marriage is community. At the same time, however, we explicitly recognized that the husband might "trace the source of the property to his separate funds and overcome the presumption with evidence that community expenses exceeded community income at the time of acquisition. If he proves that at that time *all community income was exhausted by family expenses,* he establishes that the property was purchased with separate funds." (Italics added.) (64 Cal.2d at p. 783.) Thus the court held that at the time the husband acquired a piece of property alleged to be community property, he could prove it was separate property if, then, the family expenses exceeded the community income. In acknowledging that a husband could establish that a fund, previously commingled, should be considered to be separate property at a given date if at that time *living expenses* exceeded *community income,* the court implicitly affirmed the continued vitality of the presumption that family expenses are paid from community property.

In sum, we find absolutely no support for defendant's reading of the *See* decision within the case itself; in addition, we note that none of the extensive legal commentaries on our *See* decision have suggested that the decision abrogated the well-established "family expense" presumption. (See Note, *Community Property: Commingled Accounts and the Family-Expense Presumption* (1967) 19 Stan.L.Rev. 661, 667; Note, *Community Property: Characterizing Assets Acquired from Mixed and Commingled Accounts: See* v. *See* (1967) 14 U.C.L.A.L.Rev. 935, fn. 3; Note, *Supreme Court of California 1966-1967, See* v. *See* (1967) 55 Cal.L.Rev. 1180, 1181.)

Mrs. Beam further contends, however, that even if the "family expense" presumption remains intact, the presumption was rebutted in the instant case because Mr. Beam testified at trial that family expenses were paid from his separate property. ▇ If Mr. Beam's actions demonstrated that he had made a conscious choice to use separate property, as opposed to available community property, to pay living expenses, such use of his separate property would of course constitute a gift to the community for which he would be entitled to no reimbursement. (*See* v. *See* (1966) 64 Cal.2d 778, 785 [51 Cal.Rptr. 888, 415 P.2d 776].) The record clearly shows, however, that Mr. Beam's testimony rested totally on his assumption

that *all* of his funds were his separate property; we cannot realistically characterize the husband's testimony as indicating that he consciously chose to pay for community expenses out of income which we now deem purely separate income, rather than from the income which, theoretically under the *Van Camp* formula, may now be designated community income.

If Mrs. Beam is to receive the benefit of the "community income" imputed by virtue of the *Pereira* or *Van Camp* tests, that income in the absence of evidence that Mr. Beam consciously declined to use available community funds, must be charged with the expenses that have been incurred by the community over the marriage; the income cannot fairly be isolated from the correlative expenses. (Cf. 1 deFuniak, Principles of Community Property (1943) § 159, p. 445.) ▮ Therefore we cannot conclude on this record that the trial court erred in finding that the "living expense" presumption had not been rebutted.

In sum, even if the trial court had utilized the *Van Camp* approach in determining community income, as the wife suggests, the court would still have properly concluded that there was no resulting community property from the earnings of her husband's separate property. We therefore conclude that the wife's initial contention is without merit.

3. *Sufficient evidence supports the trial court's conclusion that no transmutation of the Cabana properties from Mr. Beam's separate property to community property occurred.*

Mrs. Beam contends that the evidence clearly establishes that her husband transmuted the two resort business enterprises, Cabana Holiday I and Cabana Holiday II, concededly financed with his separate property, into community property, and thus that the trial court erred in concluding that the enterprises remained her husband's separate property. We believe that sufficient evidence in the record supports the trial court's characterization of the business as separate property.

Mrs. Beam testified at trial that in 1959, when the plans for the resorts were first initiated, her husband gathered the family together and presented the idea of the Cabana projects as a "family project," in which husband and wife were to be "partners." Thereafter, Mrs. Beam stated, she assisted in the plans for the resorts' construction and helped with the management of the project; she declared at trial that she believed these resorts were to be a "community project."

At trial Mr. Beam did not deny that his wife did expend some effort in connection with these resort projects, but he did dispute her claim that he

intended to transmute the Cabana Holiday enterprises, worth almost one-half million dollars, into community property. The husband testified that at various times throughout the marriage he and his wife discussed the manner in which title was to be held on his property and, while his wife wanted some property held in joint tenancy, he consistently stated that he desired to keep his separate property in his name alone. The evidence reveals that whereas the family's residences were held in the names of both husband and wife, the Cabana properties remained in Mr. Beam's name alone.

██ We recognize, of course, that a husband or wife may orally transmute separate property into community property (e.g., *Tomaier* v. *Tomaier* (1944) 23 Cal.2d 754, 757-758 [146 P.2d 905]; *Somps* v. *Somps* (1967) 250 Cal.App.2d 328, 334 [58 Cal.Rptr. 304]), and, even in the absence of an explicit agreement, written or oral, a court may find a transmutation of property if the circumstances clearly demonstrate that one spouse intended to effect a change in the status of his separate property. (*Title Insurance etc. Co.* v. *Ingersoll* (1908) 153 Cal. 1 [94 P. 94]; *Millington* v. *Millington* (1968) 259 Cal.App.2d 896, 913-914 [67 Cal.Rptr. 128] and cases cited therein.) Thus the wife's testimony in the instant case would clearly be sufficient to support a finding that a transmutation did occur.

The trial court, however, found that no such transmutation did take place and that the Cabana project remained separate property; such a finding will normally be upheld on appeal. ██ "The finding of a trial court that property is either separate or community in character is binding and conclusive on the appellate court if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences; . . ." (*Mears* v. *Mears* (1960) 180 Cal.App.2d 484, 500-501 [4 Cal.Rptr. 618], disapproved on other grounds in *See* v. *See* (1966) 64 Cal.2d 778, 785 [51 Cal.Rptr. 888, 415 P.2d 776]; see, e.g., *Ford* v. *Ford* (1969) 276 Cal.App.2d 9, 12 [80 Cal.Rptr. 435]; *Millington* v. *Millington* (1968) 259 Cal.App.2d 896, 915 [67 Cal.Rptr. 128]; *Somps* v. *Somps* (1967) 250 Cal.App.2d 328, 336 [58 Cal.Rptr. 304].)

██ Examining the instant record as a whole, we find that substantial evidence supports the trial court's conclusion. Mr. Beam testified that he entertained no intention of changing the status of the Cabana properties from separate to community property. Although he did not contradict the wife's declaration that some casual references to the enterprises as "family projects" had occurred, he did establish that the formal title of the property continued to be held in his name alone. The court heard testimony as to the total history of the family finances and could conclude, on the basis of the above evidence, that no transmutation of the resort properties occurred.

### 4. *The record does not demonstrate that the court committed prejudicial error in failing specifically to find that certain bonds were the separate property of the wife.*

Mrs. Beam finally contends that the trial court erred in not specifically declaring certain United States Savings Bonds in the amount of $16,000 to be her separate property.[7] The trial court made no specific finding on the ownership of such bonds at all, but merely concluded generally "[t]hat all property standing in the name of the plaintiff is his sole and separate property and all property in the name of defendant is her sole and separate property."

Although Mrs. Beam now directs this court's attention to isolated sections of the trial transcript which do appear to indicate that Mrs. Beam received bonds of this sum some time between 1941 and 1946, absolutely no evidence in the record reveals in whose names title to these bonds presently rests, or indeed whether either spouse presently retains ownership of such assets at all. In the absence of such evidence, of course, this court cannot determine whether the wife was prejudiced by the trial court's failure to render a specific finding with respect to the present ownership of these bonds; indeed if, as the wife contends in her brief before this court, "the bonds [are] in [Mrs. Beam's] name alone," then, under the trial court's findings these bonds would be the separate property of the wife. On this record, the wife has failed to make a sufficient showing to reveal that the trial court's disposition should be modified.

In sum, we conclude (1) that the trial court correctly concluded that there was no community property attributable to Mr. Beam's labor and services remaining at the time of judgment, (2) that substantial evidence supports the trial court finding that no transmutation of the husband's separate property to the community occurred, and (3) that on the present record the wife has failed to demonstrate that the trial court erred in making

---

[7]Before the Court of Appeal, the wife also claimed that the $1,500 per month alimony award was grossly inadequate and constituted an abuse of discretion. Inasmuch as Mrs. Beam has died during the pendency of this appeal, this issue, at least as to future alimony, is now moot. Insofar as her estate may presently challenge the adequacy of alimony received prior to the wife's death, we conclude that the $1,500 alimony award falls well within the broad discretion of the trial court in such matters. (See, e.g., *Nunes* v. *Nunes* (1964) 62 Cal.2d 33, 38 [45 Cal.Rptr. 5, 396 P.2d 37]; *Hall* v. *Hall* (1954) 42 Cal.2d 435, 442 [267 P.2d 249].) The evidence revealed that the Beams, a family of six, had normal living expenses of $2,000 per month; in light of this figure, the $1,500 a month alimony award intended for the wife's sole support can hardly be challenged as "grossly inadequate."

no specific finding with reference to the ownership of the government bonds.

The judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Burke, J., and Sullivan, J., concurred.

Mosk, J., concurred in the judgment.

Appellant's petition for a rehearing was denied December 2, 1971.