VIRGINIA KIRK CORD, Appellant, *v.* CHARLES E. CORD and EDWARD D. NEUHOFF, Co-Executors of the Estate of E. L. CORD, aka ERRETT L. CORD, aka ERRETT LOBBAN CORD, Deceased, and Individually, Respondents.

No. 13040

May 12, 1982

644 P.2d 1026

[Rehearing denied December 16, 1982]

*Nada Novakovich,* Reno, for Appellant.

*Bradley & Drendel,* Reno, for Respondents.

## OPINION

*Per Curiam:*

Virginia Cord appeals from a judgment declaring all assets from the estate of E. L. Cord to be separate property. This represents the second appeal between the parties.

In the initial case of Cord v. Neuhoff, 94 Nev. 21, 573 P.2d 1170 (1978), we held a post-nuptial agreement between Mr. and Mrs. E. L. Cord invalid. We reversed and remanded the case for the district court to determine whether any of E. L. Cord's estate should be apportioned as community property.

On remand, the parties stipulated that from 1937 to 1953,

11.6 percent of E. L. Cord's separate holdings constituted community property. The parties entered into this stipulation based on footnote number four in Cord v. Neuhoff, 94 Nev. 21, 573 P.2d 1170 (1978).[1] Consequently, the scope of trial was confined to the financial and business activity of E. L. Cord from 1953 until his death in 1974.

During the two-week non-jury trial, several expert witnesses testified on the various accounting procedures they used in apportioning E. L. Cord's estate. Appellant's expert witnesses testified that under their formulas, 79.37 percent of E. L. Cord's separate estate should be allocated to the community. In contrast, the respondents' expert witnesses ultimately concluded that there was no community property at E. L. Cord's death in 1974.

The district court held that the accounting methods and evidence presented by the respondents was more credible than the evidence presented by appellant. The lower court dismissed appellant's action and held all assets of E. L. Cord to be separate property. We affirm.

The district court found that E. L. Cord "expended only minimal time and effort in the supervision and investment of his separate property during the years 1953 to 1974." Appellant contends that in so ruling, the lower court failed to follow the law of the case as mandated in Cord v. Neuhoff, 94 Nev. 21, 573 P.2d 1170 (1978).

In Cord v. Neuhoff, *supra,* this court noted, "there is no suggestion that the increased value of Errett's estate was due to a natural enhancement, or that he expended only minimal effort. The evidence is otherwise and establishes that he devoted great time and energy to the management of his

---

[1] "The financial records before the court, 1937 to 1953, are revealing in this regard. A year-by-year Pereira analysis discloses that between 1937 and 1946, Virginia acquired no community property, because the yearly income generated by the preceding year's net worth was always less than 7 percent. In 1947, however, income exceeded 7 percent, thus generating community income which, when decreased by 1947 community expenses, constituted 3.5 percent of the 1947 year-end net worth. Again in 1948, the income generated by the 96.5 percent of the corpus remaining separate property exceeded a normal 7 percent return, resulting in an allocation of the excess to the community estate. This excess, when added to the income *directly* generated by the 3.5 percent of the corpus constituting community property and decreased by 1948 expenses, increased the community interest in the entire corpus to approximately 15.8 percent. In all years between 1949 and 1952, community expenses exceeded community income, thus causing a decrease in residual community holdings. Thus on December 31, 1952, approximately 11.6 percent of the holdings constituted community property." Cord v. Neuhoff, 94 Nev. 21, 27, 573 P.2d 1170, 1174 (1978) (emphasis in original).

wealth." In the initial *Cord* case, the only evidence presented was the post-nuptial contract and financial records of E. L. Cord from 1937 to 1953. Thus, this court did not consider any evidence regarding the status of E. L. Cord's separate wealth or the time, effort and skill he used in amassing it from 1953 to 1974.

A principle or rule of law enunciated by an appellate court which is necessary to the decision, becomes the law of the case and must be followed throughout its subsequent progress both in the lower court and upon subsequent appeal. The law of the first appeal is the law of the case on all subsequent appeals in which the facts are substantially the same. LoBue v. State ex rel. Dept. Hwys., 92 Nev. 529, 554 P.2d 258 (1976); *see also* Walker v. State, 85 Nev. 337, 455 P.2d 34 (1969); and State v. Loveless, 62 Nev. 312, 150 P.2d 1015 (1944).

In the instant case, appellant erroneously concludes that the law and facts presented in her first appeal are substantially the same as those presented herein. In Cord v. Neuhoff, *supra,* our decision was premised upon the parties involvement in a post-nuptial agreement. Moreover, this court only considered evidence relating to E. L. Cord's financial activity from 1937 to 1953. Here, the financial matters at issue, as well as the factual circumstances surrounding them, involve the years 1953 to 1974. We conclude the doctrine of law of the case was not violated by the lower court under the circumstances presented herein.

Next, appellant suggests the lower court erred in finding that the separate property of E. L. Cord was entitled to reimbursement for expenditures for community expenses after community assets were exhausted.

Appellant relies on the California Supreme Court case of See v. See, 64 Cal.2d 778, 51 Cal.Rptr. 888, 415 P.2d 776 (1966), wherein the court held: "[A] husband who elects to use his separate property instead of community property to meet community expenses cannot claim reimbursement. In the absence of an agreement to the contrary, the use of his separate property by a husband for community purposes is a gift to the community." The facts in See v. See, *supra,* reflect that the plaintiff husband made a conscious election to spend his separate wealth on community expenses and was guilty of commingling his separate funds with community funds.

The facts in the instant case are more akin to those found in

Beam v. Bank of America, 6 Cal.3d 12, 98 Cal.Rptr. 137, 490 P.2d 257 (1971). In Beam v. Bank of America, *supra,* the plaintiff husband assumed during the course of marriage that all his funds were his separate property. The evidence reflected that Mr. Beam did not make a conscious choice to spend his separate property on community expenses. The court in *Beam* distinguished See v. See, *supra,* and noted:

> In the instant case, of course, Mr. Beam made no conscious choice to spend his separate property, rather than the "imputed" community property on the family's living expenses. Only by means of a formula now applied by the court do we divide Mr. Beam's income into theoretical "community" and "separate" portions; Beam could hardly draw upon a fictionalized separate source to pay family expenses. Thus our decision in *See* is simply not in point.

Beam v. Bank of America, 6 Cal.3d 12, 98 Cal.Rptr. 137, 144, 490 P.2d 257, 264 (1971).

Here, E. L. Cord's expenditures for community expenses were made while operating under the assumption that the parties' post-nuptial agreement was valid, and all his funds were his separate property. Consequently, E. L. Cord never made a conscious choice to spend his separate property on community expenses which exceeded community assets.

■■

If E. L. Cord had made a conscious choice to use his separate property, rather than available community property, to pay community expenses, such use of his separate property would have constituted a gift to the community for which reimbursement could not be claimed. *See* See v. See, 64 Cal.2d 778, 51 Cal.Rptr. 888, 415 P.2d 776 (1966). The record clearly establishes, however, that E. L. Cord assumed through the years 1953 until his death in 1974 that all of his funds were his separate property. He did not consciously elect to pay for community expenses out of income which is now deemed separate in character.

The standard enunciated in Beam v. Bank of America, 6 Cal.3d 12, 98 Cal.Rptr. 137, 490 P.2d 257 (1971) supports the district court's ruling requiring reimbursement to E. L. Cord's separate estate for expenditures on family living expenses in years when community assets were exhausted.

■■

Under the law, rents and profits from a spouse's separate

property constitute separate property. However, all property acquired after marriage is presumed to be community property. This presumption may be rebutted by clear and convincing evidence. Kelly v. Kelly, 86 Nev. 301, 468 P.2d 359 (1970).

It is well settled that there must be an apportionment of any increment in value between the separate estate of the owner and the community, unless the increment is due solely to a natural enhancement of the property or minimal effort by the owner. Pereira v. Pereira, 156 Cal. 1, 103 P. 488 (1909); Johnson v. Johnson, 89 Nev. 244, 510 P.2d 625 (1973); Cord v. Neuhoff, 94 Nev. 21, 573 P.2d 1170 (1978). In the instant case, the district court found that E. L. Cord did not take an active part in any business he invested in or expend any time, energy or skill in managing real property he owned. The court also found that any increase in value of his separate property was attributable to other managers or general economic conditions.

The record reflects that from 1953 to E. L. Cord's death in 1974, many of Cord's assets increased in value due to natural enhancement and escalating real estate values. During this time period, E. L. Cord's health noticeably declined. Consequently, he delegated substantial authority to his son Charles, who acted as general manager for a number of Cord businesses. Respondents presented several fact witnesses who testified about E. L. Cord's work habits and declining health. Many of these same witnesses testified that Cord's assets increased in value due to substantial holdings in raw land, inflationary factors, and natural enhancement.

Appellant called only one fact witness, who had sporadic contact with E. L. Cord. He testified that Cord made all final decisions regarding his various business interests until his death in 1974.

Both parties introduced expert testimony in the area of accounting. The experts for respondents and appellant based their formulations on the year-by-year apportionment method enunciated in Pereira v. Pereira, 156 Cal. 1, 103 P. 488 (1909). Although the expert accounting witnesses for both parties testified that they utilized the *Pereira* apportionment method, their particular accounting formulas resulted in vastly different findings.

The district court was presented with extremely conflicting evidence involving both factual and accounting issues. "Where a trial court, sitting without a jury, has made a determination upon the basis of conflicting evidence, that determination

should not be disturbed on appeal if it is supported by substantial evidence.'' Fletcher v. Fletcher, 89 Nev. 540, 516 P.2d 103 (1973); *see also* Ormachea v. Ormachea, 67 Nev. 273, 217 P.2d 355 (1950). Thus, the record must reveal that the judgment was clearly erroneous and not based upon substantial evidence before the district court will be reversed. Fletcher v. Fletcher, 89 Nev. 540, 516 P.2d 103 (1973).

We cannot say from this record that the trial court erred in determining that the position propounded by appellant was not adequately proved to the satisfaction of the court. Appellant's other points of error being without merit, we affirm.

GUNDERSON, C. J., MANOUKIAN and SPRINGER, JJ., ZENOFF, SR. J.,[2] and MENDOZA, D. J.,[3] concur.

---

[2]The Chief Justice designated THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in place of THE HONORABLE CAMERON BATJER, Justice. Nev. Const., art. 6, § 19; SCR 10.

[3]The Governor designated the Honorable John F. Mendoza, District Judge of the Eighth Judicial District, to sit in this case in place of THE HONORABLE JOHN MOWBRAY, Justice, who voluntarily disqualified himself. Nev. Const., art. 6, § 4.