Filed 8/2/24  Marriage of Maiberger CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re the Marriage of LUKE AND KATHERINE MAIBERGER.<br><br>LUKE MAIBERGER,<br><br>     Appellant,<br><br>v.<br><br>KATHERINE MAIBERGER,<br><br>     Respondent. | E081223<br><br>(Super.Ct.No. FAMSS1104109)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Michael J. Gassner, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Iris Joan Finsilver for Appellant.

Thompson Thompson Valladolid, Byron C. Thompson, and Jeffrey S. Valladolid for Respondent.

This is the second appeal in the marital dissolution proceedings of Luke Maiberger and Katherine Maiberger.[1] In the first appeal, we affirmed the trial court's order characterizing certain shares of stock as Luke's separate property. (*In re Marriage of Maiberger* (Nov. 16, 2021, E075261) [nonpub. opn.].) After we affirmed that order, the court determined that Katherine may pursue a claim for equitable apportionment concerning the stock. A claim for equitable apportionment arises if one spouse's efforts increase the value of their separate property during marriage. (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 851 (*Dekker*).) In that case, "the community should receive a fair share of the profits which derive from the [spouse's] devotion of more than minimal time and effort to the handling of [their] separate property." (*Beam v. Bank of America* (1971) 6 Cal.3d 12, 17 (*Beam*).) Luke appeals from the order permitting Katherine to pursue a claim for equitable apportionment. We affirm.

BACKGROUND

I.      *The parties' marriage and Luke's acquisition of the stock*

Luke's parents founded P&R Paper Supply Company, Inc. (the paper company) in 1976. Luke began working for the paper company in 1983, and he and Katherine married in 1985. Luke's parents were the sole shareholders of the paper company until 1991. In 1991, Luke's parents gifted him 24 shares of stock in the paper company. The shares were valued at $8,000 each for gift tax purposes.

---

[1]     We refer to the parties by their first names because of their shared last name. No disrespect is intended.

In August 2011, Luke petitioned to dissolve the parties' marriage. Both the petition and Katherine's response asked the court to determine the parties' property rights. Both documents also listed the "[c]ommunity interest in P&R Paper" under the section for declaring community and quasi-community assets. Luke later filed an amended petition identifying the paper company shares as his separate property.

The court entered a status-only judgment of dissolution in July 2014. The first page of the status-only judgment stated: "Jurisdiction is reserved over all other issues." Page three of the status-only judgment similarly stated: "Jurisdiction is reserved for later determination of all other pending issues in this case."

II.     *Bifurcated proceedings to characterize the shares of stock*

In October 2017, Luke filed a request for an order characterizing the shares in the paper company as his separate property. He asked the court to bifurcate the issue under rule 5.390(b)(4) of the California Rules of Court, which authorizes the court to "separately try" whether "property is separate or community" if "resolution of the bifurcated issue is likely to simplify the determination of the other issues." (Cal. Rules of Court, rule 5.390(b) & (b)(4).) The rule identifies "[h]ow to apportion increase in value of a business" as a different issue that may be separately tried. (Cal. Rules of Court, rule 5.390(b)(5).)

Luke's memorandum of points and authorities in support of his request explained the scope of the request as follows: "This brief does not address the appropriate 'carve out' to the community, because Luke first requests a finding that the interest in [the paper company] is separate property[,] and then evidence can be presented as to the value of

3

those shares via a community carve out if the court grants Luke's request for orders." (Capitalization omitted.)

The court bifurcated the characterization of the shares and set the matter for trial. Luke's trial brief argued that they were his separate property because they were a bona fide gift from his parents. Katherine's trial brief argued that they were community property because Luke acquired them during marriage; he lacked evidence to establish the elements of a gift; and even if his parents called them a gift, they were actually remuneration in exchange for his work at the paper company.

The court tried the matter over the course of three days in May and July 2019. Several months later, it issued a statement of intended decision concluding that the shares in the paper company "and the ownership they represent . . . are [Luke's] sole and separate property, and are not includable as community property."

Shortly after the court issued its intended decision, Luke served Katherine with a family law at-issue memorandum (San Bernardino County form SB 12389) requesting that the court set several issues for trial, including the "VanCamp carve-out" issue.

Katherine then filed objections to the statement of intended decision asking the court for "clarification of the phrase 'not includable as community property.'" More specifically, she asked: "Does this statement mean that the shares of stock are separate property subject to any community property interest? Or is the Court stating that no community property interest can or may exist regardless of principles [in] Pereira v.

4

Pereira (1909) 156 Cal. 1 and <u>Van Camp v. Van Camp</u> (1921) 53 Cal.App.17?"[2]  In

response to Katherine's objection, Luke asserted:  "The Court's intention is clear.  The

shares are not community.  Since separate property is not divided, it will be awarded to

Luke as his separate property.  Katherine can raise any claims of 'community equitable

apportionment' in Luke's separate property."  (Capitalization omitted.)

In the final statement of decision, the court did not change the language on which

Katherine sought clarification.  The court concluded that the evidence showed that the

shares in the paper company were a gift from Luke's parents.  The shares consequently

were Luke's sole and separate property and "not includable as community property."  We

affirmed that decision in November 2021.  (*In re Marriage of Maiberger*, *supra*,

E075261.)

III.     *Proceedings after the first appeal*

In January 2022, Luke filed a request for an order denying equitable

apportionment or, in the alternative, determining the methodology for apportionment.

His memorandum in support of the request argued that Katherine was estopped from

seeking equitable apportionment with respect to his shares in the paper company, the

court had no jurisdiction over such a claim, and Katherine failed to reserve jurisdiction

over the issue.

---

[2]      The two primary methods of equitable apportionment are derived from *Pereira v. Pereira* (1909) 156 Cal. 1 (*Pereira*) and *Van Camp v. Van Camp* (1921) 53 Cal.App. 17 (*Van Camp*).

Around the same time, Luke filed a separate request for an order to release funds that were being held in a client trust account. The funds apparently were proceeds from the sale of Luke's shares in the paper company. The record does not include Luke's request regarding the funds, but it includes a reporter's transcript of the February 2022 hearing on the request. According to Luke's argument, the paper company had been sold, and Luke received roughly $17,800,000 for his shares. Luke noted that his request for an order denying equitable apportionment was pending. The parties nevertheless made arguments bearing on the issue. For instance, Luke argued that equitable apportionment "is not a community property right in the res—or in the actual thing." Rather, it "is a possible right to reimbursement to the community for the community's work and services during the marriage." He further argued that "equitable apportionment cannot become a transmutation." For her part, Katherine argued that she had a community interest in the growth of the business because Luke worked there. She noted that the court had not yet heard evidence on the extent of his involvement in the business and the nature of the business's growth, and Katherine had not received discovery bearing on the issue.

At the conclusion of the hearing, the court ordered the funds in the client trust account released to Luke. The court reasoned that it had found the shares to be separate property, and the proceeds from their sale were separate property. The court further explained: "I'm not convinced that there is a meritable argument that, no, some of that becomes community property because they were married at the time. [¶] He received a

6

considerable salary, and that's certainly community property. I'm not going to argue that at all. But the shares, the ownership of that business, is his, in my opinion."

In October 2022, the court heard Luke's request for an order denying equitable apportionment,[3] and it issued an order denying the request in January 2023. The court reasoned that if one or both spouses actively manages a separate property business, and the business increases in value during marriage, then "the court must apportion the total economic benefit between community property and separate property." The court observed that Luke requested bifurcation on a single issue in 2017—the characterization of the shares as his separate property. The court had resolved that single issue and no other property issues. The equitable apportionment claim did not even arise until there was a determination that the shares were separate property. The court concluded that Katherine should have the opportunity to present her claim for equitable apportionment.

The court granted Luke's request to certify its order for immediate appellate review. (Cal. Rules of Court, rule 5.392(b)-(c) [authorizing the family court to issue a certificate of probable cause for an interlocutory appeal from an order on a bifurcated issue].) We then granted Luke's motion to appeal the order. (Cal. Rules of Court, rule 5.392(d) [authorizing a party to file a motion to appeal once the family court issues the certificate of probable cause].)

---

[3] A new judicial officer was presiding over the case at this point. The prior judge apparently retired in April 2022.

DISCUSSION

Luke argues that the trial court erred by concluding that Katherine could pursue a claim for equitable apportionment. He contends that Katherine is barred from asserting the claim under the doctrine of res judicata, she waived her right to seek equitable apportionment, the court lacks subject matter jurisdiction over the claim, and Katherine failed to request an express reservation of jurisdiction. All of his arguments lack merit.

"[I]ncome produced by an asset takes on the character of the asset from which it flows. Thus, rents, issues and profits are community property if derived from community assets, and separate property if derived from separate assets." (*Dekker*, *supra*, 17 Cal.App.4th at p. 851.) However, a claim for equitable apportionment arises if community efforts increase the value of separate property. (*Ibid.*) "[T]he intrinsic increase of separate property is separate, but the fruits of the community's expenditures of time, talent, and labor are community property." (*Id.* at p. 850.) Accordingly, "it becomes necessary to quantify the contributions of separate capital and community effort to the increase," and the "community is entitled to the increase in profits attributable to community endeavor." (*Id.* at p. 851.)

There are two primary approaches to equitable apportionment. (*Beam*, *supra*, 6 Cal.3d at p. 18.) The *Pereira* method "allocate[s] a fair return to the separate property investment and allocate[s] the balance of the increased value to community property as arising from community efforts." (*Dekker*, *supra*, 17 Cal.App.4th at pp. 852-853.) Under the *Van Camp* method, the court determines the reasonable value of the

8

community's services, allocates that amount to community property, and allocates the balance to separate property.  (*Id.* at p. 853.)

Luke's arguments present issues of law that we review de novo.  (*Lynch v. California Coastal Com.* (2017) 3 Cal.5th 470, 476 [waiver or forfeiture is a legal issue reviewed de novo if the facts are undisputed]; *A.F. v. Jeffrey F.* (2023) 90 Cal.App.5th 671, 681 ["When the evidence is not in dispute, subject matter jurisdiction is a legal issue, which we review de novo"]; *Ayala v. Dawson* (2017) 13 Cal.App.5th 1319, 1325 ["'Whether the doctrine of res judicata applies in a particular case is a question of law which we review de novo'"].)

Luke first argues that Katherine is barred from pursuing equitable apportionment under the doctrine of res judicata.  Res judicata is "an umbrella term encompassing both claim preclusion and issue preclusion."  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 823-824.)  Claim preclusion bars relitigation of causes of action.  (*Id.* at p. 824.)  Luke's argument involves issue preclusion, which "prevents relitigation of previously decided issues."  (*Ibid.*)  "[I]ssue preclusion applies:  (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."  (*Id.* at p. 825.)  Luke contends that the order characterizing the paper company shares as his separate property is a final adjudication barring Katherine's equitable apportionment claim.  But the issue of equitable apportionment was not actually litigated and necessarily decided in the bifurcated proceedings regarding the shares. Luke requested only that the court decide whether the shares were separate or community

property.  How to apportion any increase in the value of the shares was a different issue that arose only after the court determined that they were separate property.  The parties did not actually litigate that issue in the bifurcated proceedings, and the order characterizing the shares did not decide that issue.

In a related vein, Luke argues that Katherine waived the right to seek equitable apportionment.  According to Luke, the court found that the shares were "not includable as community property," Katherine recognized an ambiguity in the ruling when she asked the court to clarify it, and yet she did not challenge that portion of the ruling in the first appeal.  Luke asserts that her failure to bring that challenge amounts to a waiver.  But Luke's argument rests on an incorrect premise—that the court rejected Katherine's equitable apportionment claim when it found that the shares were not includable as community property.  Again, the court did not decide the equitable apportionment issue.  The court's statement of decision did not discuss whether any increase in the value of the shares is attributable to community efforts, and if so, how that increase should be apportioned.  And the finding that the shares themselves are not community property is consistent with the principle of equitable apportionment.  The principle does not transmute the separate property of one spouse into community property.  (*In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1477.)  It merely accounts for community efforts that increase the value of the separate property.  (*Ibid.*)  Katherine's failure to raise equitable apportionment in the prior appeal did not waive any such claim, because there was no equitable apportionment ruling to challenge.

Luke next argues that the superior court lacks subject matter jurisdiction over the equitable apportionment claim. Under Family Code section 2010, the court has jurisdiction to make orders concerning "the settlement of the property rights of the parties." (Fam. Code, § 2010, subd. (e); unlabeled statutory citations refer to this code.) An equitable apportionment claim involves settling the property rights of the parties, and Luke does not persuade us otherwise. He asserts that section 2010 does not confer any power over the separate property of one spouse. It is true that "neither spouse has any interest in the separate property of the other" (§ 752), but equitable apportionment does not give one spouse an interest in the separate property of the other. Instead, it is a way for the court to determine what constitutes separate property and what constitutes community property. (See, e.g., *Beam*, *supra*, 6 Cal.3d at p. 17 [the husband's efforts in managing his separate property during marriage "were more than minimal," so "the trial court was compelled to determine what proportion of the total profits should properly be apportioned as community income"].)

Luke lastly argues that Katherine failed to request an express reservation of jurisdiction over any equitable apportionment claim. Luke's petition for dissolution and Katherine's response to the petition both requested that the court determine the parties' property rights. Section 2010 gives the court jurisdiction to do that. The status-only judgment decided dissolution only and expressly reserved jurisdiction over all other issues. Luke does not explain why all of that was insufficient to reserve jurisdiction over any equitable apportionment claim, nor does he cite authority for the proposition that Katherine had to request a specific reservation of jurisdiction over equitable

11

apportionment.  He therefore fails to show that the court erred.  (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822 [appellant has the burden of demonstrating reversible error].)

DISPOSITION

The order is affirmed.  Katherine shall recover her costs of appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
                    J.

We concur:

MILLER
        Acting P. J.

RAPHAEL
        J.

12