ARNOLD DAVIS and WILBUR DAVIS, Appellants, v. WARDEN, NEVADA STATE PRISON, Respondent.

No. 6745

July 21, 1972 498 P.2d 1346

*Paul H. Lamboley,* of Reno, for Appellants.

*Robert List,* Attorney General; *Robert E. Rose,* District Attorney, and *Kathleen M. Wall,* Deputy District Attorney, Washoe County, for Respondent.

*Joseph L. Ward,* United States Attorney, and *Raymond B. Little,* Assistant United States Attorney, Amicus Curiae. *Robert D. Stitser,* of Reno, and *Daniel J. Taaffe, David H. Getches, Robert S. Pelcyger,* Native American Rights Fund, Boulder, Colorado, Amicus Curiae.

# OPINION

By the Court, THOMPSON, J.:

The state district court denied the appellants' application for post-conviction relief challenging state court jurisdiction to entertain and dispose of the criminal charges filed against them.

In 1966 they had pleaded guilty to attempted murder, were adjudged guilty and sentenced to serve terms of not less than three nor more than twenty years in the Nevada State Prison. They are currently serving their sentences. Since they are enrolled members of the Pyramid Lake Paiute Tribe of Indians, and since the crime of attempted murder of a non-Indian to which they pleaded guilty occurred on patented land within the exterior boundaries of the Pyramid Lake Indian Reservation, Washoe County, they assert that exclusive jurisdiction of their offenses was vested in the Federal District Court and that the state court was powerless to act.[1] This is the main issue to be resolved.

1. It is not suggested that the sentencing court knew that the appellants were enrolled members of the Pyramid Lake

---

[1] Indian country within the meaning of 18 USC, §§ 1151, 1153, extends to all land within the exterior boundaries of an Indian reservation, patented or unpatented. Seymour v. Superintendent, 368 U.S. 351 (1962).

Paiute Tribe of Indians or that their crimes occurred in Indian country. The record of the sentencing court does not disclose a jurisdictional infirmity. Consequently, we first must consider whether the judgments of conviction are subject to collateral attack absent a challenge to the jurisdiction of the sentencing court at the time of arraignment, plea or sentence.

Washington has ruled that a state cannot acquire jurisdiction over Indians by estoppel, stipulation, or waiver by the failure to question jurisdiction at the time of arraignment, plea, or sentence. A collateral attack is there permitted and evidence of the status of the defendant and the situs of his crime may then be received.[2] In 1957, California held to the contrary, limiting the collateral attack to the face of the record of the convicting court unless exceptional circumstances showing a denial of constitutional rights are asserted.[3] The California case, however, proceeded into the federal court system, and the Federal District Court entertained the collateral attack upon the state judgment, considered facts dehors the record in order to test the jurisdiction of the state court over an Indian, and set aside the conviction. In re Carmen's Petition, 165 F.Supp. 942 (1958); affirmed, Dickson v. Carmen, 270 F.2d 809 (9 Cir. 1959). It would be futile for this Court to adopt a view at variance with the Court of Appeals for the Ninth Circuit. Rahn v. Warden, 88 Nev. 429, 498 P.2d 1344 (1972). Therefore, we hold that this collateral attack is permissible.

2. The power of the federal government over Indians is derived from Art. 1, sec. 8, cl. 3, of the United States Constitution [Perrin v. United States, 232 U.S. 478 (1914)] and flows from the necessity of giving uniform protection to a dependent people [United States v. Kagama, 118 U.S. 375 (1885)]. As noted in Williams v. Lee, 358 U.S. 217, 220, 221 (1959), Congress consistently has acted on the assumption that the states have no power to regulate the affairs of Indians on a reservation. When Congress has wished the states to exercise this power it has expressly granted jurisdiction. See 18 USC 1162 granting such jurisdiction to Alaska, California, Minnesota, Nebraska, Oregon and Wisconsin. And, on August 15, 1953, by Sec. 7, ch. 505, Public Law 280, being 67 Stat. 588, the United States gave its consent "to any other State not having jurisdiction with respect to criminal offenses or civil causes of

[2]Wesley v. Schneckloth, 346 P.2d 658 (1959); Roberts v. Schneckloth, 346 P.2d 668 (1959); Application of Monroe, 346 P.2d 667 (1959); Charley v. Rhay, 348 P.2d 977 (1960); White v. Schneckloth, 351 P.2d 919 (1960).

[3]Application of Carmen, 313 P.2d 817 (1957).

action, or with respect to both, . . . to assume jurisdiction at such time and in such manner as the People of the State shall, by affirmative legislative action, obligate and bind the State to assumption thereof."

Nevada responded to Public Law 280 in 1955 when the legislature enacted NRS 41.430. That statute provides for state assumption of criminal and civil jurisdiction over public offenses committed or civil causes of action arising in areas of Indian country in Nevada 90 days after July 1, 1955, except in counties where the Board of County Commissioners petitions the Governor to exclude the area of Indian country within that County from the operation of the statute and the Governor, by proclamation, honors that petition.[4]

The Washoe County Board of Commissioners did petition the Governor to exclude the Pyramid Lake Indian Reservation from the operation of NRS 41.430, and the Governor, by proclamation, honored that petition on June 27, 1955. That proclamation has not been superseded by another as provided for by section 3 of the statute.

3. The state district court denied relief on the ground that subsecs. 2 and 3 of NRS 41.430 unconstitutionally delegated legislative power to the governor, and went on to hold that sec. 1 of the statute was severable from the afflicted sections thereby resulting in total state assumption of criminal and civil jurisdiction over Indians.[5]

The power to make law was not delegated to the governor; only a discretion with respect to its execution was conferred.

[4]Another statute, NRS 194.030, approved March 27, 1953, extended all laws concerning crimes and punishments to all Indians in Nevada, whether on or off an Indian reservation, and whether the crimes were committed on or off such reservation. That statute is ineffective and void since it was enacted before the United States, by Public Law 280, gave its consent to state assumption of jurisdiction.

[5]NRS 41.430: "1. Pursuant to the provisions of section 7, chapter 505, Public Law 280 of the 83d Congress, approved August 15, 1953, and being 67 Stat. 588, the State of Nevada does hereby assume jurisdiction over public offenses committed by or against Indians in the areas of Indian country in Nevada, as well as jurisdiction over civil causes of action between Indians or to which Indians are parties which arise in the areas of Indian country in Nevada, subject only to the conditions of subsection 2 of this section.

"2. This section shall become effective 90 days after July 1, 1955, and shall apply to all the counties in this state except that, prior to the effective date, the board of county commissioners of any county may petition the governor to exclude and except the area of Indian country in that county from the operation of this section and the governor, by

This is permissible. Pine v. Leavitt, 84 Nev. 507, 445 P.2d 942 (1968); City of Las Vegas v. Mack, 87 Nev. 105, 481 P.2d 396 (1971); State v. Paul, 337 P.2d 33 (Wash. 1959).

Since the criminal proceedings against the appellants did not fall within the jurisdiction of the state district court, their petitions for relief must be granted, their convictions set aside and they are ordered released from state custody.

ZENOFF, C. J., and BATJER, MOWBRAY, and GUNDERSON, JJ., concur.

proclamation issued before the effective date of this section, may exclude and except such Indian country.

"3. In any case where the governor does exclude and except any area of Indian country, as provided in subsection 2 of this section, he may, by subsequent proclamation at the request of the board of county commissioners of any county which has been excluded and excepted, withdraw and remove the exclusion and exception and thereafter the Indian country in that county shall become subject to the provisions of this section."