Cathy HARDY; The Hardy Family Trust; Cathy Hardy, Trustee, Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

CV–N–94–824–ECR.

United States District Court,
D. Nevada.

Feb. 21, 1996.

William P. Koontz, Cottage Grove, Oregon, for Plaintiffs.

Kathryn E. Landreth, United States Attorney, Reno, Nevada, W. Carl Hankla, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC, for Defendant.

## ORDER

EDWARD C. REED, Jr., District Judge.

Before the court is the government's motion for summary judgment (Doc. # 18). Plaintiffs have brought this wrongful levy action under 26 U.S.C. § 7426. The central dispute concerns a married couple's respective ownership interests in certain real property: The government has levied against real property to which plaintiff Cathy Hardy has title, on the ground that as community property of her and her husband Ray Hardy, the realty is subject to levy in satisfaction of Ray Hardy's federal income tax delinquencies. Cathy Hardy has sued the government under the federal wrongful levy statute, arguing that the subject property is her separate property, and therefore not subject to levy

for her husband's tax debts. *See Schmit v. United States*, 896 F.2d 352 (9th Cir.1989).

■ If the property in question, consisting of some eighty acres of land near Golconda, Nevada, together with various improvements, is truly community property, then Ray and Cathy Hardy, as husband and wife, are both owners of it, and the property is subject to levy in satisfaction of the federal income tax liability of either spouse. *Babb v. Schmidt*, 496 F.2d 957 (9th Cir.1974).

The government seeks summary judgment on the ground that there exists no issue of fact to be tried regarding the ownership interests of Ray and Cathy Hardy; the government seeks the benefit of the state law presumption that property acquired during marriage is community property, and argues that Plaintiff has failed to provide the requisite "clear and convincing evidence" sufficient to rebut that presumption. *See Cord v. Cord*, 98 Nev. 210, 644 P.2d 1026 (1982).

■ The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party is entitled to summary judgment as a matter of law where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute. Fed. R.Civ.P. 56(c); *Semegen v. Weidner*, 780 F.2d 727 (9th Cir.1985). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141 (9th Cir.1983).

■ The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson, supra*. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248, 106 S.Ct. at 2510. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex, supra*.

■ Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.* When faced with a motion for summary judgment, the material before the court "must be viewed in the light most favorable to the [non-moving] party." *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

■ The briefs filed by both parties in this summary judgment motion appear to assume that this dispute over the community or separate character of the subject realty should be resolved via resort to state law marital property rules. This court, however, is not convinced that state law marital property rules should automatically apply in this case. *See generally* Gary C. Randall & Katti Telstad, *Community Property Rules or American Indian Tribal Law—Which Prevails?*, 31 Idaho L.Rev. 1071 (1995).

Plaintiff Cathy Hardy is a certified member of the Te Moak band of the Western Shoshone tribe. She married Ray Hardy in 1981. The property in question, on which Ray and Cathy Hardy have lived since 1985, although not within the boundaries of an Indian reservation, is situated on what Ms. Hardy claims to be ancestral Shoshone land.

The question thus arises whether, within the context of a federal income tax dispute, the legal character of real estate owned by Indians should be determined by reference to state marital property law.

▉▉▉▉ The legal status of Indian property is subject to plenary Congressional authority. *Winton v. Amos,* 255 U.S. 373, 391, 41 S.Ct. 342, 349, 65 L.Ed. 684 (1921). Congress exercised that authority when in 1953 it enacted Public Law 280.[1] That statute authorizes the several States to adjudicate civil disputes to which an Indian is a party. Nevada is a "Public Law 280 state," having in 1955 enacted a state statute assuming state judicial jurisdiction over civil actions to which an Indian is a party and which arise in Indian Country.[2] Nev.Rev.Stat. § 41.430. Therefore, Nevada is free to impose its marital property rules on Indian married couples, whether residing on or off the reservation.

▉▉▉▉ But this court must decide whether a Nevada court would in fact make that choice. Only once has the Nevada Supreme Court been asked to invoke § 41.430 to establish a state-law rule of decision for a civil dispute involving Indians. In *Voorhees v. Spencer,* 89 Nev. 1, 504 P.2d 1321 (1973) the Nevada Supreme Court affirmed a state trial court's civil jurisdiction over the probate of an Indian decedent's estate. The court held that Nevada had legitimate interest in requiring probate of property located within its borders, and ruled that because the action of the probate court did not infringe on the Indians' right to enact and to be governed by their own laws, that state probate law applied to the decedent Indian's estate.

For those reasons the *Voorhees* court found that the state trial court properly exercised jurisdiction over the decedent Indian's estate. Under *Voorhees,* then, a state court would be entitled to adjudicate a dispute whose outcome depended on whether the property at issue belonged to a single spouse, or to the marital community, and that state court would further be entitled to apply state marital property rules to the Indian litigants. The *Voorhees* court ruled explicitly that absent some federal prohibition, "if the event or matter in controversy which calls for judicial action arises outside Indian country, Indians are subject to the laws of the jurisdiction involved." 504 P.2d at 1324–25 (citing *In re Wolf,* 27 F. 606 (D.Ark.1886); *Ex parte Moore,* 28 S.D. 339, 133 N.W. 817 (1911)).

If the property rights of the Indian couple in *Voorhees,* who lived on an Indian reservation, were subject to adjudication under state law, then *a fortiori Voorhees* should apply to the present case, where the Indians involved live entirely outside the boundaries of the reservation.

This court must assume that the Nevada Supreme Court would rule that determinations of the separate or community character of Indian marital property should be resolved by reference to state law. The court will therefore, in the context of this wrongful levy action, apply Nevada marital property rules to the present dispute over the character of the property upon which the government has levied.

▉▉▉▉ In Nevada all property acquired by either spouse during coverture is presumed to be community property.[3] This presumption may be rebutted by clear and con-

---

1. Pub.L. No. 280, 67 Stat. 588 (1953) (codified as amended at 18 U.S.C. § 1162, 25 U.S.C. §§ 1321 to 1326, 28 U.S.C. § 1360).

2. "Indian country" means all land within the exterior boundaries of an Indian reservation. *Davis v. Warden, Nevada State Prison,* 88 Nev. 443, 498 P.2d 1346, 1347 (1972) (citing *Seymour v. Superintendent,* 368 U.S. 351, 82 S.Ct. 424, 7 L.Ed.2d 346 (1962)).

3. Nev.Rev.Stat. § 123.130 (Separate property of wife; separate property of husband) provides: · all property of the wife owned by her before marriage, and that acquired by her afterwards

by gift, bequest, devise, descent or by an award for personal injury damages, with the rents, issues and profits thereof, is her separate property.

Nev.Rev.Stat. § 123.220 defines community property as

[a]ll property, other than that stated in Nev. Rev.Stat. § 123.130, acquired after marriage by either husband or wife ... unless otherwise provided by an agreement in writing between the spouses, effective only as between them, an agreement under 123.190, or a judicial decree of separate maintenance or of legal separation under Nev.Rev.Stat. § 123.259.

vincing evidence. *Forrest v. Forrest*, 99 Nev. 602, 668 P.2d 275, 277 (1983); *Kelly v. Kelly*, 86 Nev. 301, 468 P.2d 359 (1970). The personal opinion of either spouse as to the character of the property is of no moment whatsoever. *Peters v. Peters*, 92 Nev. 687, 557 P.2d 713, 716 (1976).

 Plaintiff has maintained that in fact neither she nor her husband owned the property levied upon. She claims that the property is held in a revocable inter vivos trust, with herself as settlor, sole trustee and sole beneficiary. But there is no evidence that Cathy Hardy created a valid trust with respect to the subject realty; the only evidence of a trust is a single page styled "Declaration of Trust," appended as Ex. H to Defendant's Motion for Summary Judgment, Doc. # 18.

In Nevada, a trust created in relation to realty is not valid unless either created by operation of law or evidenced by a written instrument signed by the trustee or by a written instrument conveying title to the property and signed by the settlor. Nev. Rev.Stat. § 163.008. The "Declaration of Trust" bears no signature at all. Nor does plaintiff's counsel's affidavit provide any basis to believe that Cathy Hardy ever executed an instrument which would have satisfied § 163.008. Though counsel swears to the existence of a second page, the affidavit, even if taken as true, fails to describe a valid trust under the statute. Therefore the trust fails, and legal and equitable title merge in Cathy Hardy.

 Nevada applies the "tracing" rule to determine the character of marital property. Title to marital property may be vested in either spouse and the property may still be community property. The question whether the property belongs solely to one spouse or to the marital community depends on the source of the funds with which it was acquired. If purchased with community funds, it is community property; if by separate funds, it is the property of the spouse whose funds comprised the purchase price. *Kelly v. Kelly*, 86 Nev. 301, 468 P.2d 359 (1970).

 Plaintiff Hardy claims that the subject real estate was purchased entirely with her separate funds. She has produced evidence that the down payment on the land was made with funds derived from her divorce settlement in a previous marriage. Indeed, the government concedes it has no evidence to contradict Ms. Hardy's sworn testimony that at least $4100—the down payment and subsequent arrears payments—of the $24000 total purchase price was made from her separate property. Defendant's Reply in Support of Motion for Summary Judgment, Doc. # 21, at 9 n. 1.

 As to the source of the balance of the purchase price, Ms. Hardy's affidavit filed in support of her opposition to the government's summary judgment motion and the testimony she gave at her deposition both state that she satisfied the mortgage on the land with money she earned ranching and tending bar. Cathy Hardy Affidavit, appended as Ex. 17 to Plaintiff's Opposition to Summary Judgment, Doc. # 20; Ex. appended to Defendant's Reply in Support of Motion for Summary Judgment, Doc. # 21. Typically, income earned by either spouse is community property. *Fredrickson & Watson Constr. Co. v. Boyd*, 60 Nev. 117, 102 P.2d 627 (1940). However, married couples may protect the separate property character of their earnings by written agreement. Nev.Rev.Stat. § 123.190.

Plaintiff Hardy does not claim the existence of any written agreement to maintain the separate property character of her and her husband's earnings. She does, however, claim an oral agreement to that effect. Plaintiff's Opposition to Summary Judgment, Doc. # 20, at 10. Both Cathy and Ray Hardy have filed affidavits swearing to the existence of this parol agreement. Cathy and Ray Hardy Affidavits, appended as Exs. 17 and 18 to Plaintiff's Opposition to Summary Judgment, Doc. # 20.

 Nevada requires a married couple who wish to "opt out" of its statutory community property scheme to memorialize their agreement to do so in writing. Nev. Rev.Stat. § 123.220. However, an oral

agreement to maintain separate marital property may be enforceable despite the statute of frauds under the doctrine of equitable estoppel.[4] Where one party to the parol agreement has performed to such an extent that she will have no adequate remedy unless the agreement is enforced, equity will grant such relief. *Schreiber v. Schreiber*, 99 Nev. 453, 663 P.2d 1189, 1189–90 (1983) (citing *Evans v. Lee*, 12 Nev. 393 (1877)).

The facts in *Zahringer v. Zahringer*, 76 Nev. 21, 348 P.2d 161 (1960) were not wholly dissimilar to those in the case at bar. Mr. Zahringer purchased stock with funds he had borrowed from his parents. The Nevada Supreme Court ruled that where there was evidence that at the time of the stock purchase Mr. Zahringer had separate funds with which he could have made the stock purchase, and there was also evidence that he had in fact used those separate funds, contrary testimony notwithstanding, the question whether such evidence sufficed to overcome the presumption of community property remained for trial.

The record in the present case contains evidence of the existence of an agreement between Cathy and Ray Hardy to maintain separate property, as well as evidence that Cathy Hardy spent considerable time, money, and energy maintaining and improving the property in question in reliance on the agreement between herself and her husband that her income, land, and the house the couple built on the land, would remain solely her property. The government, naturally, denies the existence of such an agreement. The dispute appears genuine, material, and eminently factual.

*IT IS THEREFORE ORDERED* that Defendant's Motion for Summary Judgment (Doc. # 18) is *HEREBY DENIED.*

*IT IS FURTHER HEREBY ORDERED* that the Clerk shall issue a pretrial notice order in this action.

---

4. The court is mindful of the fact that, unlike the situation in *Zahringer, infra,* where proof of a parol property agreement was offered by one party to the alleged agreement to estop the other party from denying its existence, here the two parties to the alleged agreement both swear to its existence. Proof of the executed parol agreement will not "estop" the government from contesting its existence; this court anticipates that the government will vigorously litigate the issue. Rather, upon proof that the Hardys did agree to maintain separate property, and did act in reliance on and in performance of that agreement, the agreement will serve to prevent the levying on one spouse's property in satisfaction of the tax debt of the other, in the same manner as if the agreement were in writing as required by statute.