Filed 9/26/23

<u>CERTIFIED</u> <u>FOR</u> <u>PARTIAL</u> <u>PUBLICATION</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re the Marriage of JENNIFER and ALAN SIMONIS. | C095193 |
| JENNIFER SIMONIS,<br><br>Respondent,<br><br>v.<br><br>ALAN SIMONIS,<br><br>Appellant. | (Super. Ct. No. FL-2015-1273) |

APPEAL from a judgment of the Superior Court of Alpine County, Daniel P. Maguire, Judge. Affirmed.

Barth Daly and Thomas W. Barth for Appellant.

Weintraub Tobin Chediak Coleman Grodin Law Corporation, Brendan J. Begley and Audrey A. Millemann for Respondent.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of parts I, III, IV, and V of the Discussion.

1

Jennifer and Alan Simonis were married for 27 years and separated in September 2015. For clarity, we will refer to the parties by their first names when referring to them individually. While married the parties ran a farm where they grew crops, and they raised cattle.

Evidence presented at trial suggests Jennifer bore some recordkeeping responsibility for the farm operations during the parties' initial period of separation, and Alan maintains Jennifer was in control of accounting for marital assets for at least a month after the parties separated. But other than this early period of control over accounting records, between the date of separation and the date of trial on reserved issues to divide the community estate approximately five years later, Alan retained control of the three main non-real estate assets that belonged to the community: cash on hand, crop income from 2015 crops, and a herd of cattle we and the parties refer to as the TCB Herd.

In the time during which Alan controlled the assets, he commingled the cattle, cash, and income with his separate property. Alan also made payments on various community debts using commingled funds. At trial in 2020, the trial court looked to long-established precedent regarding the tracing of commingled assets during marriage, found that Alan had failed to meet his burden to trace his separate property interest in the cattle or his use of separate property to pay down community debts, and divided the bulk of the community estate accordingly. The court made no specific order regarding the value of the cash on hand or the 2015 crop income, but it noted the court's continuing jurisdiction over unadjudicated assets and liabilities under Family Code section 2556 (statutory section citations that follow are found in the Family Code unless otherwise stated) when ruling on posttrial motions.

On appeal, Alan argues the trial court incorrectly interpreted and applied case law regarding how to characterize the separate and community interests in commingled assets

2

and payments on community debts. He argues that an aggregate tracing analysis—where the court would total up all cash derived from the three non-real estate assets and compare that to the total he paid on community debts to identify his separate property payments on debts without regard to when debts were paid—is an appropriate tracing analysis here.

Additionally, Alan argues that the trial court ought to have determined the value of the non-real estate community assets at the date of separation. He argues that the court contributed to its own inability to calculate a value for those assets at the date of separation in how it managed the admission of evidence about the value of community assets during the trial, be that in its questioning of Alan or in its treatment of possible documentary evidence in possession of both parties.

In short, Alan seeks to persuade this court that the trial court should have ignored precedent regarding the tracing obligations of spouses claiming a separate property interest in commingled funds and (1) calculated a value of the three community assets at the date of separation; (2) added those values up; (3) subtracted that total from the total amount that he paid towards community debts using commingled assets during the parties period of separation regardless of when those debts were paid and if there were community assets available to pay some of the debts at the time those debts were paid; (4) treated that difference as representing the total amount of separate property he paid towards community debts post separation; and (5) divided the remaining assets of the community estate relying on that calculation. Additionally, Alan asks this court to find the trial court abused its discretion in not seeking the admission of evidence during trial that would support his unprecedented theory for dividing the community estate.

Finally, Alan argues the trial court committed legal error when it made a postjudgment order for the release of certain proceeds to Jennifer from Jennifer's counsel's trust account. The proceeds were from the sale of a parcel of real property the community had owned.

3

We affirm the judgment and postjudgment order to release funds.

## FACTS AND HISTORY OF THE PROCEEDINGS

Proceedings Pre-Judgment

We refer to cattle owned by the parties at the time of separation other than the TCB Herd as the "Original Herd." Pursuant to a stipulated order filed November 3, 2015, Alan was awarded the Original Herd for a price of $722,244, for which he owed Jennifer $361,122.

The community property also included real property in Madison, California, which we refer to as the "505 Property" and real property in Esparto, California, which we refer to as the "Road 85 Property."

At some point in the action, the parties agreed that any debts Alan incurred post January 1, 2016, would be Alan's sole responsibility, and any crops planted after January 1, 2016—and any income from them—would be Alan's separate property and responsibility.

On April 17, 2018, the trial court entered an order regarding the distribution of funds from sale proceeds of the 505 Property. The order outlines various payments and credits to be awarded to each of the parties. Among the credits identified were credits Alan would receive from Jennifer because he had used some of his separate income to make payments on community debts. These credits totaled $642,281. However, the credits, as well as charges and other items identified in the order, remained "subject to reallocation as between the parties when the court [held] an evidentiary [hearing] on all remaining disputed credits/charges/offsets/claims between the parties" at a later date.

The trial court held a trial on reserved issues in June and July of 2020. Jennifer was represented by counsel at trial. Alan appeared in pro. per.

Following the trial, Jennifer's counsel informed the trial court that the Road 85 Property had sold. The net sale proceeds were $2,086,646.77.

4

On November 16, 2020, the trial court issued a tentative decision and proposed statement of decision. Both parties filed objections to the tentative decision. Notably, for our purposes, Alan, then represented by counsel, argued (1) that the TCB Herd was distinct from the Original Herd; (2) that the TCB Herd was sold off by "on or about May 18, 2016," with all proceeds totaling $402,075.58 paid toward the repayment of an outstanding Tri Counties Bank loan; and (3) that the "total of community debts paid by [Alan] . . . after separation" exceeded the "total value of community funds received by [Alan] on or after [the] date of separation, exclusive of the value of the TCB Herd."

In December 2020, the parties entered a stipulated order to have the Road 85 Property net sale proceeds held in Jennifer's counsel's trust account pending further order of the court. In April 2021, the trial court presided over a hearing regarding the proposed statement of decision and other matters. Following the hearing, Jennifer's counsel prepared a proposed judgment packet and presented it to Alan's counsel. Alan's counsel objected to language in the proposed judgment that would have released funds from the sale proceeds to Jennifer upon entry of judgment.

In a later filing, Alan clarified that his objection was to language that he believed would release to Jennifer his share of the proceeds from the sale of the Road 85 Property. Among other reasons stated in his objection, Alan argued that he should be able to use the funds, at his discretion, as part of a cash deposit to stay the enforcement of the judgment pending appeal under Code of Civil Procedure sections 917.1, subdivision (b), 995.210, 995.730, and 995.710, subdivision (a).

Decision and Judgment

On August 2, 2021, the trial court entered a judgment on the reserved issues. The judgment contained orders regarding spousal support, the division of property, and the payment of attorney fees and costs.

5

In the first amended final statement of decision attached to the judgment, the trial court began by setting out what it believed was the governing law applicable to characterizing assets retained and then disposed of by Alan following the parties' separation.

The court stated that when community and separate property are commingled, each type of property will retain its character so long as the components of the commingled assets can be adequately traced to their community and separate sources. Citing *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 823, the court identified two primary tracing methods for tracing commingled property, the "direct tracing" method and the "family living expense tracing." "Under the 'direct tracing' method, the disputed asset . . . is traced to the withdrawal of separate property funds from the commingled account. This method requires *specific records* reconstructing each separate and community property deposit, and each separate and community property payment as it occurs." (*In re Marriage of Braud, supra,* 45 Cal.App.4th at p. 823.) "Under the 'family living expense' or 'recapitulation' method, it is assumed that family living expenses are paid out of community property funds. [Citations.] Payments may be traced to a separate property source by showing community income at the time of the payments or purchase was exhausted by family expense, so that the payments or purchase necessarily must have been made with separate property funds. (*See v. See* (1966) 64 Cal.2d 778, 783 []; [citation].) The recapitulation must be sufficiently exhaustive to establish not only that separate property funds were available to make the payments, but that they were actually used. [Citations.] As with direct tracing, the record must demonstrate that community income was depleted at the time the particular asset was acquired. (*See v. See*, *supra*, 64 Cal.2d at p. 783; [citation].)" (*In re Marriage of Braud, supra,* 45 Cal.App.4th at pp. 823-824.)

The trial court observed that without sufficient tracing commingled assets will be deemed community assets, and it noted the critical duty this evidentiary obligation places

6

on a spouse who wishes to claim as their separate property an asset which has been commingled with community assets.

The trial court then applied these standards to make findings on the community or separate nature of various assets and debt payments at issue in the proceedings.

For example, the court noted that the Original Herd and TCB Herd had been physically commingled, and that this had placed a burden on Alan to provide a tracing analysis to the extent he wanted to claim a portion of the commingled herds was his separate asset. The court noted that in a response to the trial court's tentative decision and proposed statement of decision Alan had offered a tracing analysis in which he attempted to show that all of the TCB Herd was sold by May 2016 to satisfy a community debt and that all community property assets he held were "dwarfed" by the community debts he paid. The court stated, "[t]he upshot of [Alan's] claim is that he necessarily used his separate property to pay numerous community obligations, because the community assets were either already sold to satisfy a community debt (as to the cattle), or insufficient to meet the community's debt (as to the cash and farming proceeds)."

The court was not persuaded. First, the court found there was insufficient evidence to fully support Alan's claim that all the TCB Herd was sold to pay community debts, implicitly finding there was insufficient evidence to support a finding that no community proceeds were available from the sale of the TCB Herd to either acquire additional assets or make payments on community debts. In so doing, the court observed that (1) no evidence was offered that demonstrated the TCB Herd had, in fact, constituted a net total of 193 heifers at purchase, as Alan had claimed; (2) there was insufficient evidence that cattle sold to pay the Tri Counties Bank loan were from the TCB Herd as opposed to from the Original Herd; and (3) Alan's tracing analysis of cattle did not account for 20 heads of cattle Alan had gifted his sons.

7

Second, the court found fault in Alan's recapitulation analysis. It observed that a recapitulation analysis requires proof that the community assets were exhausted at the time the purchase or payment at issue was made. The court noted that while respondent might have identified the date the TCB Herd was sold off, he never identified "(much less proved)" a date when the cash on hand at separation and 2015 crop income were exhausted.

With respect to the community debts he paid, Alan did not "systematically analyze them and show they were made after exhaustion," which the court stated the law requires.

The trial court made clear that Alan's tracing analysis was faulty because rather than providing a transaction-specific analysis, Alan was seeking credit for all post separation payments made because "*in toto*, the community debts he paid exceeded the community assets he held." The trial court explained that this type of aggregate analysis had been rejected in *See v. See*, *supra*, 64 Cal.2d at page 782, in which our Supreme Court had concluded that to demonstrate an asset acquired during marriage was separate property because it was acquired with separate funds, the party seeking to establish the separate nature of the acquisition using recapitulation would need to demonstrate community expenses exceeded community income at the time of acquisition.

The trial court stated that while *See v. See* may have applied to the acquisition of property and in this case the parties are concerned with the payment of community debts, "the same principle applies." The trial court stated that, under this requirement of time-specific analysis, if Alan wished to follow the recapitulation approach, Alan would need to show that all community property in his possession was exhausted when he paid each community debt. Observing Alan had not done this, the court concluded his tracing analysis failed.

The trial court then made additional findings about specific claims the parties made as to the nature of assets, funds received postseparation, and payments made on various debts. These included:

8

- A finding that because Alan had failed to trace whether particular animals of the commingled herds were separate or community when sold, all proceeds from cattle sales would be treated as community property.
- A finding that the then-current herd of wagyu cattle were community property, because Alan had failed to offer a valid tracing analysis to show they were purchased with separate property.

  We note that, in his fairly lengthy introduction in which he makes numerous representations about the facts demonstrated, the proceedings below, and the findings of the trial court without offering a single citation to the record, Alan suggests Jennifer's counsel wrongly argued—and by accepting the arguments the trial court wrongly concluded—that the wagyu cattle were community property even though they are a different breed of cattle than the community TCB Herd, which was made up of angus cattle. But the trial court's conclusion isn't based on the idea that the herds may have mated and produced more cows, it is based on the conclusion that Alan commingled community and separate funds and did not provide the level of tracing required to show he bought the wagyu cows with his own separate property.
- A finding that while Alan had provided some evidence that he had made the payments identified in the April 17, 2018, order, he had failed to demonstrate he made those payments with his separate property and, therefore Alan owed Jennifer $642,280 for unproven credits for disbursements made on the sale of the 505 Property.
- A finding that neither party had provided the court with sufficient evidence to calculate the amount possibly due to one party or the other from the 2015 crop income, and since both parties had borne record-keeping

9

responsibilities regarding those funds at some point, that no order could be made to divide those proceeds.

In its judgment, the court concluded Alan owed Jennifer a combined total of $1,245,056.26, to be recovered from his share of the proceeds of the sale of the Road 85 Property, with additional amounts owed to the extent the amount would not be covered by his half of the proceeds. The court ordered all sale proceeds from the Road 85 Property to be held in Jennifer's attorney's trust account upon close of escrow until they cleared, at which point counsel was to release $850,000 to Jennifer from her share of the net sale proceeds. Remaining proceeds were to be issued to Jennifer upon entry of the judgment. Additionally, the judgment included an order that stayed the enforcement of the judgment pending the earlier of Alan filing a notice of appeal or the time to file a notice of appeal expiring, but it ordered that $193,000 in funds be released to Jennifer forthwith notwithstanding the stay.

### Alan's Motions Challenging the Judgment

On September 14 and 15, 2021, Alan filed a motion for new trial, a motion to vacate the judgment, and a motion to set aside the judgment and statement of decision. The court heard and denied all three motions at an October 18, 2021, hearing, during which it provided an oral statement of its findings, orders, and reasoning, which it incorporated into its findings and the order after hearing.

In the ruling, the court addressed challenges Alan had made to the judgment due to the court's failure to make findings regarding cash on hand on the date of separation, and to ascertain the amount of 2015 net crop income. With respect to cash on hand on the date of separation, the court observed, "[n]o party asked the Court to determine the amount . . . . And in any event, [Alan] has not shown that there's sufficient evidence to make such a finding." Regarding the 2015 crop income, the court stated, "[t]he parties did not present the Court with sufficient evidence to calculate the net 2015 crop income.

10

Family Code Section 2556 allows parties to file post trial motions to, quote, 'obtain adjudication of any community asset or liability omitted or not adjudicated by the judgment.' "

The court also addressed Alan's arguments that it had improperly rejected his aggregate tracing analysis. In a well-reasoned analysis, the court ruled, "[Alan] notes that the Supreme Court case [*See v. See*] that rejected aggregate tracing analysis arose in the context of asset commingling during marriage, while this case involves asset commingling after separation. [¶] This appears to be a novel issue, and neither side has cited authority regarding the proper procedure for post separation tracing in this context. However, this Court believes its original conclusion remains correct for two reasons.

"First, aggregate tracing seems especially inappropriate in the post separation environment. The holder of the community assets acts as trustee and has a duty to properly account for the disposition of community assets. That duty is especially important in the adversarial context arising after separation. It seems incongruous to lessen the accounting burden after separation.

"Second, there is insufficient evidentiary records even for an aggregate tracing analysis as to each of the three community asset classes held by [Alan]: the cattle, cash on hand, and net crop 2015 income.

"The Court does agree with [Alan] that the family expense presumption applies, but it does not change the result because of the evidentiary and legal deficiencies just noted."

On November 2, 2021, Alan filed a notice of appeal challenging the judgment and the trial court's rulings on his motions to vacate the judgment.

Jennifer's Postjudgment Motion

On November 4, 2021, Jennifer filed a motion in which she asked the trial court to interpret the judgment and the parties' stipulation to deposit Road 85 Property escrow

11

proceeds into Jennifer's counsel's trust account, for declaratory relief, and to order Jennifer's counsel to release $1,044,646.77 in Road 85 Property sale proceeds from his trust account to Jennifer.

According to a declaration filed with the motion, Jennifer's counsel believed that, under the judgment, he was required to release the $1,044,646.77 that then remained in his trust account from the Road 85 Property sale proceeds to Jennifer. However, he had received communications from Alan's counsel demanding he release almost all of the remaining funds to Alan or deposit them with the court as part of an undertaking by Alan on appeal.

On February 7, 2022, the court granted Jennifer's request for an order for her counsel to release the funds to her. It ordered her counsel to release the funds to her on March 18, 2022.

Alan filed a notice of appeal of the February 7, 2022, order on March 4, 2022. On March 14, 2022, Alan filed a petition for writ of supersedeas seeking to stay the trial court's order to release the funds. We denied the petition.

DISCUSSION

I

*Preliminary Matters: Lack of Exhibits; Jennifer's Request for Judicial Notice*

In his statement of facts, while trying to characterize the parties' property interests, and in arguing there is at least a margin of certainty about the income the community received post separation, Alan frequently cites to trial exhibits. He also argues the trial court abused its discretion, in part, by (1) failing to properly manage the introduction of documentary evidence Alan had available at trial, and (2) in allowing Jennifer to withdraw certain evidence. We do not have the exhibits Alan cites in these statements and arguments.

In his notice of appeal of the November 2, 2021, decision, Alan elects to proceed with a clerk's transcript.  In the section of the form notice designating the record where an appellant identifies exhibits to be included with the clerk's transcript, Alan listed four exhibits, Exhibits A-D, which do not include many of the exhibits to which Alan refers in his briefing, e.g., Exhibits 515(d) and 501.29.  According to our records, Alan also did not file in the superior court a notice designating exhibits to be transmitted to this court pursuant to California Rules of Court, rule 8.224.

Trial exhibits not transmitted to the court of appeal are not part of the appellate record, and we do not consider them.  (*In re Marriage of Blazer* (2009) 176 Cal.App.4th 1438, 1447, fn. 4.)

Jennifer filed a request for judicial notice, seeking judicial notice of pages from the benchguide, *Handling Cases Involving Self-Represented Litigants: Benchguide for Judicial Officers.*  Alan did not oppose the request.  Judicial notice of the existence of the guide by this court is permissible under Evidence Code sections 452, subdivisions (b) and (h), and 459, subdivision (a).  We grant the request.

On September 5, 2023, Alan sought to file two motions to augment the record. We accepted the motions and grant them.

II

*Tracing Property Interests*

Alan argues the trial court applied the wrong analytical framework when assessing his tracing of community and separate assets, and the use of those assets to satisfy community debts.  He essentially takes the position that in applying the recapitulation analysis requirements articulated in *See v. See*, *supra*, 64 Cal.2d 778 and its progeny, the trial court committed legal error, because the standards articulated in those cases apply to tracing community property and separate property during marriage, and "substantially different . . . guiding legal principles" apply in "tracing the exhaustion of community

13

funds during separation to pay community debts." Specifically, Alan takes issue with the trial court's requirement that tracing be done using a " 'transaction-by-transaction' " or " 'time specific' " analysis instead of by aggregating total community assets and total community expenses post separation and comparing the two. We do not agree with that argument.

A. Standard of Review

Alan frames his argument as a legal one: he claims the trial court applied incorrect legal standards for tracing community and separate property during a period of separation, and that, therefore, the standard of review is de novo. In contrast, Jennifer argues that trial courts have the discretion to select which tracing methods they employ, and that we should review the trial courts selection here under an abuse of discretion standard. We will treat this question as a legal one subject to de novo review.

" ' "Questions of law relate to the selection of a rule; their resolution is reviewed independently." ' " (*Dyanlyn Two v. County of Orange* (2015) 234 Cal.App.4th 800, 808.) Here, Alan is functionally asking us to decide if a rule articulated in case law that prohibits the use of a specific form of tracing analysis to characterize property acquired and expended during marriage was properly used by the trial court here to prevent the use of that tracing analysis in characterizing property acquired and expended during a period of separation. (See *In re Marriage of Ciprari* (2019) 32 Cal.App.5th 83, 95 [finding that a wife's argument on appeal that California law permits only two tracing methods to overcome the presumption that property acquired during marriage is community property is a legal issue or a mixed issue in which the legal issue predominates and subject to de novo review].)

B. General Principles Regarding the Tracing of Commingled Assets

"Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is

14

community property." (§ 760.) Statutory exceptions include property acquired by gift, bequest or devise, or descent; and rent, issues, or profits from separate property earned during the marriage. (§ 770.)

When a married person commingles their separate property with community property, "the mere commingling of separate property and community property" does not change the status of the property interests. (*In re Marriage of Braud, supra,* 45 Cal.App.4th at pp. 822-823.) However, "if the separate property and community property interests have been commingled in such a manner that the respective contributions cannot be traced and identified, the entire commingled fund will be deemed community property pursuant to the general community property presumption of section 760." (*Id.* at p. 823.)

California case law has long held that the community property presumption applies to property acquired during the marriage from an account or fund in which the spouse has commingled their separate funds with community funds, but if the funds used to purchase the property at issue can be traced to separate property the purchased property will be deemed separate property. (*In re Marriage of Mix* (1975)14 Cal. 3d 604, 611-612.) The burden of proving separate funds were used to acquire the property—in order to overcome the community property presumption—is on the spouse asserting the acquired property's separate status. (*In re Marriage of Marsden* (1982) 130 Cal.App.3d 426, 441.)

As recognized by the trial court, California courts generally recognize two methods for tracing separate and community property interests in comingled funds: "direct tracing" or "family living expense tracing," which is also called the "recapitulation" method. (*In re Marriage of Mix*, *supra*, 14 Cal.3d at p. 612; *In re Marriage of Braud*, *supra*, 45 Cal.App.4th at p. 823.) "Direct tracing" requires specific records reconstructing each separate and community property deposit, and each separate and community property payment as it occurs. (*In re Marriage of Braud*, at p. 823.) The

"recapitulation" method requires showing that community income was exhausted by family expenses at the time the purchase or payment at issue was made. (*Id.* at pp. 823-824.)

Notably, in *See v.* See, *supra*, 64 Cal.2d at pages 781, 782-783, our Supreme Court reversed a trial court judgment that had allowed a husband to claim a separate interest in all property acquired during the marriage that existed at the time of the divorce on the grounds "that a proven excess of community expenses over community income during the marriage establishes that there has been no acquisition of property with community funds." That is, the Court rejected a theory that was based on aggregating all income and all expenses during the marriage in favor of the recapitulation method's requirement to demonstrate an exhaustion of community funds by family expenses *at the time* the property at issue was acquired. (*Id*. at p. 783.)

In *In re Marriage of Ciprari, supra,* 32 Cal.App.5th at page 96, the court recognized that strict adherence to either "direct tracing" or "[r]ecapitulation" might not be the only permissible means for tracing under California law. However, the tracing methods the court allowed for in *Ciprari* did involve an expert looking at *every transaction* made from commingled funds, and that method credited the community with securities purchased within individual accounts when community funds were available within the purchasing accounts at the time the purchases were made. (*Id.* at pp. 92-93.) That is, while the method may not have given the community credit for the purchase of a security when there were no community funds in the purchasing account despite the existence of community funds in other accounts, the method still relied on detailed analysis that carefully examined the funds available to acquire an asset in the account used for that acquisition *at the time* the acquisition was made.

16

C.      The Application of Tracing Methods to Calculate *Epstein* Credits

In *In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84, our Supreme Court recognized that, " 'as a general rule, a spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution.' "

In *In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252, 1281, when it remanded a matter for the purpose of identifying the extent to which separate property was used to make community payments post separation, the court discussed the burden a spouse who commingled funds would be under to prove the separate property nature of payments made on community debts post separation. The husband and wife in *In re Marriage of Prentis-Margulis* (2011) 198 Cal.App.4th 1252, 1257-1259, had been separated for 12 years by the time there was a trial to divide their assets, during which time the husband had continued to manage their joint finances and make payments from funds containing commingled funds. One of the issues on appeal was whether the trial court had erred in ordering the husband to be reimbursed by the community for payments he made to benefit the community and the wife after separation. (*Id.* at p. 1280.) The wife argued the trial court had improperly relied on the husband's expert—who had formed his opinion without knowing if the husband had used his separate funds to make the payments at issue—to calculate the amount of reimbursement. (*Id.* at pp. 1280-1281.) The court of appeal found the wife's argument had merit, reversed the trial court's decision, and remanded the trial court to reconsider. (*Id.* at pp. 1280, 1282.)

In discussing tracing requirements on remand in *In re Marriage of Prentis-Margulis & Margulis*, *supra*, 198 Cal.App.4th at page 1281, the court of appeal quoted *In re Marriage of Braud*, *supra*, 45 Cal.App.4th at pages 822-823, for the proposition that while the mere commingling of property does not alter the nature of property interests, if

17

respective contributions cannot be traced and identified, the whole of the commingled mass will be deemed community property. The court then discussed possible tracing methods to be used on remand, and stated, "a spouse who has commingled community and separate funds can defeat the presumption with evidence, employing traditional family law tracing methods, such as direct tracing or the family expense method of tracing. (See *In re Marriage of Mix*[*, supra,*] 14 Cal.3d [at p.] 612 []; *In re Marriage of Cochran* (2001) 87 Cal.App.4th 1050, 1058–1059 [].) Thus, to obtain reimbursement for any postseparation payments made from his commingled accounts, [husband] should employ one of these tracing methods." (*In re Marriage of Prentis-Margulis & Margulis*, *supra,* 198 Cal.App.4th at pp. 1281-1282.)

As such, case law supports a finding that similar rules apply to tracing the use of commingled property both before and after spouses separate. Appropriately detailed tracing methods include direct tracing and a family expense/recapitulation method (*In re Marriage of Prentis-Margulis & Margulis*, *supra,* 198 Cal.App.4th at pp. 1281-1282), *and* aggregate tracing methods do not satisfy a spouse's burden for detailed tracing when claiming a separate property interest (*See v. See*, *supra*, 64 Cal.2d at pp. 781, 782-783). Therefore, the trial court correctly concluded that Alan could not satisfy his tracing burden simply by showing the total community debts he paid in the five years between separation and trial exceeded the total community assets he held post separation.

D.      Alans's Efforts to Distinguish *See v. See* Do Not Persuade

Alan's attempts to convince us *See v. See*'s reasoning should not apply in the postseparation context are unavailing.

First, he points to language in *See* that highlights the rights to property held by a spouse during marriage and presumptions that property acquired during the marriage belongs to the community, implying the importance of detailed as opposed to aggregate accounting is diminished once spouses separate. (See *See v. See*, *supra*, 64 Cal.2d at

18

pp. 782-783.) But a spouse's equal interest in a community estate—and in the income and proceeds obtained from the use of assets in the community estate—does not vanish at the date of separation. Their interest in making sure their share of the estate is being fairly accounted for and credited remains equally strong while the other spouse retains control of community property in the period after they separate and before the courts enter a judgment dividing the estate. (See *In re Marriage of Koppelman* (1984) 159 Cal.App.3d 627, 634-635, overruled on other grounds in *In re Marriage of Fabian* (1986) 41 Cal.3d 440, fn. 13.) For example, if sales proceeds from the TCB Herd or 2015 crop income were used to pay community debts or to acquire other income generating assets, Jennifer has an equal interest in credit given for those payments and the income generated from acquired assets. If Alan was not required to meet his burden to trace the amount of those proceeds or where they went, it would subject Jennifer to a risk of losing the benefit of her equal share without sufficient accounting even though Alan had been the one to control the assets.

Second, Alan (1) points to language in *See v. See*, *supra*, 64 Cal.2d at pages 784-785, regarding the then existence of a presumption that the use of separate property to pay community expenses was a gift; and (2) notes that in *In re Marriage of Smith* (1978) 79 Cal.App.3d 725, 746-747, the court concluded that gift presumption should not apply postseparation. The implication of Alan's argument is that if the gift presumption is different postseparation, the tracing burden should be different too. But in the portions Alan cites of both *See* and *Smith* the courts were considering the interaction of the gift presumption and a rule that a spouse should not be entitled to reimbursement for separate funds used to pay community costs during marriage absent an agreement. The cited portions were not regarding how a spouse would need to trace their separate property interests in commingled funds to prove the amount of reimbursement to which they were entitled.

Third, Alan suggests that the resulting "failure to provide reimbursement" following its finding that Alan has failed to satisfy his tracing duty results in the violation of the court's duty to order an equal reimbursement of the community estate at dissolution. But, as demonstrated by the contrast between one of the cases Alan relies on to support this argument, *In re Marriage of Ramsey & Holmes* (2021) 67 Cal.App.5th1043, and this one, this argument ignores precedent regarding the nature of tracing burdens identified in *See* and its progeny and the impact of a party claiming a separate stake in commingled funds failing to meet that tracing burden.

In *In re Marriage of Ramsey & Holmes*, *supra*, 67 Cal.App.5th at page 1045, a husband challenged the trial court's determination of a community interest in the family home. The husband asserted the court used an incorrect number in calculating the value. (*Ibid.*) He alleged the error was caused by his former wife's failure to submit sufficient evidence to calculate the correct number. (*Ibid.*) At trial the husband had not submitted the evidence because he believed it was the wife's burden. (*Ibid.*) As a result, the trial court had made its determination about the value of the community interest in the home without detailed evidence regarding the breakdown of certain payments made towards the home's mortgage and performed a final calculation using assumed numbers that were estimated using incomplete information. (See *id.* at p. 1050 [the trial court stated it had not received a breakdown of how payments were allocated among " 'taxes and interest, whatever you're talking about' " and was only provided an estimate of the average monthly mortgage payment, and that it " 'went with what it had and that's all there is' "].)

On appeal, the husband argued the trial court had used the wrong number and that its decision must be reversed. (*In re Marriage of Ramsey & Holmes*, *supra*, 67 Cal.App.5th at pp. 1050-1051.) The wife argued that the husband had forfeited the argument by failing to present evidence on the correct numbers. (*Id.* at p. 1051.) The court of appeal agreed that the trial court had used incorrect numbers, and then

considered the question of forfeiture. (*Ibid.*) The court of appeal concluded the appropriate remedy was to reverse and remand with directions. (*Id.* at p. 1052.) The court offered three reasons for its disposition. (*Ibid.*) First, it found forfeiture—as urged by the wife—inappropriate given husband had pointed to the absence of evidence needed to establish the correct numbers during trial. (*Ibid.*) Second, it stated that once it was established that a "community property interest existed, the family court was obligated to determine the value of that interest and divide it equally." (*Ibid.*) The court observed that, in this instance, "*both spouses had an equal interest in ensuring that the court had sufficient information with which to fulfill its judicial responsibility.*" (*Ibid.*, italics added.) Finally, the court observed that, given the court's obligation to identify the community property interest, the court should have required the parties to submit the additional evidence it needed when that information was readily available to one of the parties. (*Ibid.*) In short, the finding in *In re Marriage of Ramsey & Holmes*, *supra*, 67 Cal.App.5th 1043 rested heavily on the fact that *both* parties had failed in their *shared burden* to provide evidence regarding the value of a particular asset.

In contrast, here precedent has established who has the tracing burden when it comes to commingled assets, has recognized that sometimes the spouse with that burden will fail to sufficiently identify separate and community interests, and has stated commingled assets will be deemed community assets when tracing is insufficient. Here, it was Alan's burden to trace separate and community interests in the commingled herds and the payment of community debts using separate or community funds from commingled sources. (See *In re Marriage of Prentis-Margulis & Margulis*, *supra*, 198 Cal.App.4th at p. 1281; *See v. See*, *supra*, 64 Cal.2d at p. 784 ["The husband may protect his separate property by not commingling community and separate assets and income. Once he commingles, he assumes the burden of keeping records adequate to establish the balance of community income and expenditures at the time an asset is acquired with commingled property"].) Case law has established that " '*[I]f the separate*

21

*property and community property interests have been commingled in such a manner that the respective contributions cannot be traced and identified, the entire commingled fund will be deemed community property* pursuant to the general community property presumption of section 760. [Citation.]' (*In re Marriage of Braud*[*, supra,*] 45 Cal.App.4th [at pp.] 822–823 [].)" (*In re Marriage of Prentis-Margulis & Margulis*, *supra*, 198 Cal.App.4th at p. 1281, italics added.) Once the trial court found Alan had not met his tracing burden, it properly treated commingled assets as community assets, and debt payments from those assets as community payments. (See *In re Marriage of Braud*, *supra*, 45 Cal.App.4th at pp. 822-823 [if separate and community interested cannot be traced in a commingled asset, treat the whole as community].) The trial court then equally divided assets in the community estate given this proper treatment of assets and debt payments.

Finally, citing section 2626, Alan argues courts have "broad discretion to order reimbursement of separate property used to pay preexisting community obligations during separation," and that there are no cases that address the application of the "family expense presumption" (which is applied in a recapitulation analysis) to determine a spouse's right to reimbursement for the payment of community debts during a period of separation.

Section 2626 does not support Alan's characterization of the trial court's discretion as "broad" in this context. What the statute says is, "[t]he court has *jurisdiction* to order reimbursement in cases it deems appropriate for debts paid after separation but before trial." (Italics added.) The words "broad discretion" do not appear in this unambiguous declaration of a court's jurisdiction to order reimbursement. "Courts may not insert words or add provisions to an unambiguous statute. . . . 'In construing this, or any, statute, our office is simply to ascertain and declare what the statute contains, not to change its scope by reading into it language it does not contain or by reading out of it language it does. We may not rewrite the statute to conform to an assumed intention

22

that does not appear in its language.' (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 253 [].)" (*Hudson v. Superior Court* (2017) 7 Cal.App.5th 1165, 1172-1173.)

As to Alan's arguments regarding a lack of case law regarding the use of the "family expense presumption," this statement sweeps too broadly. While it does not contain an exhaustive analysis, *In re Marriage of Prentis-Margulis & Margulis*, *supra*, 198 Cal.App.4th at pages 1281-1282, provides it is appropriate to rely on the two standard tracing mechanisms to ascertain the nature of funds used to pay down community debts postseparation and pre-trial. Additionally, in *In re Marriage of Koppelman*, the court recognized that "[t]he spouse who controls community property assets occupies a position of trust which is not terminated as to assets remaining in his or her hands after separation. 'It is part of his fiduciary duties to account to the wife for the community property when the spouses are negotiating a property settlement agreement.' [Citations.] [¶] When a trustee spouse has commingled separate and community funds and assets so that it is impossible to ascertain and identify each source, the commingled whole will be presumed to be community property." (*In re Marriage of Koppelman, supra,* 159 Cal.App.3d at pp. 634-635.) Together, these cases support a conclusion that the detailed tracing analyses required of commingled funds should also be applied to the expenditure of comingled funds postseparation.

The trial court did not err in finding an aggregate analysis could not meet Alan's tracing burden.

III

*Valuation of Assets at Date of Separation*

Alan argues the court erred in failing to make ultimate findings about the value of community assets—the cash on hand, the TCB Herd, and the 2015 crop income—at the date of separation. Alan states that the judgment "in favor of Jennifer" rests, in part, "on the court's conclusion that insufficient evidence was presented to reach ultimate findings

23

of fact on the value of the three principal community assets at [the] date of separation, the TCB herd of cattle, cash on hand, and 2015 . . . crop income."

Alan's argument ignores statutory commands regarding the valuation of community property and mischaracterizes the trial court's conclusions.

Under section 2550, in a dissolution proceeding, "the court shall, either in its judgment of dissolution of the marriage, in its judgment of legal separation of the parties, or at a later time if it expressly reserves jurisdiction to make such a property division, divide the community estate of the parties equally." Under section 2552 "[f]or the purpose of division of the community estate upon dissolution of marriage or legal separation of the parties, except as provided in subdivision (b), *the court shall value the assets and liabilities as near as practicable to the time of trial*." (Italics added.) Under subdivision (b), "[u]pon 30 days' notice by the moving party to the other party, the court for good cause shown may value all or any portion of the assets and liabilities at a date after separation and before trial to accomplish an equal division of the community estate of the parties in an equitable manner." Here, there was no motion filed by either party to value the three community assets at the date of separation.

Alan's argument that the court needed to determine the value of the community property as of the date of separation in order to equally divide the community estate is, quite simply, contrary to the statutory mandate of section 2552, subdivision (b).

Additionally, the trial court's judgment "in favor of Jennifer"—in which it rejected Alan's arguments that he used large amounts of separate funds to pay community debts—does not rest on a finding that there was insufficient evidence about the value of the three assets on the date of separation. Rather, as detailed above, the trial court's conclusion rested on the correct application of judicial precedent regarding a spouse's duty to trace separate and community assets that are commingled if that spouse wishes to claim a portion of the commingled mass as their separate property. The court found Alan had failed to meet his burden.

24

The portion of the record Alan cites to support his claim that the trial court's award rests on a finding there was insufficient evidence about the value of the cash on hand, cattle, and crop income at the date of separation does not support his position. In this portion of the record, where the court recited its ruling on the record as to why it was denying Alan's posttrial motions, the court, having stated aggregate tracing seemed particularly inappropriate in the post separation, said there were "insufficient evidentiary records even for an aggregate tracing analysis as to each of the three community asset classes held by [Alan]." In making this statement, the court neither stated that an aggregate tracing analysis would have been appropriate nor indicated that if it used an aggregate analysis it would have needed to deviate from section 2552, subdivision (b)'s requirements and valued those assets at the date of separation as opposed to closer to the date of trial.

To the extent Alan's position is that some ultimate value—be that a value assigned on the date of separation or based on what the community took in for them—needed to be assigned to the various assets to divide them equally, the trial court did not shirk this duty. As to the cattle, having determined the herds were commingled, that Alan could not trace his separate interests in the commingled herd, and therefore that the entire commingled herd was community property based on *See v. See* and its progeny, the trial court identified proceeds received for the sale of cattle and determined the value of the remaining herd and divided it. To the extent the court found there was insufficient evidence to determine the amount of cash on hand and 2015 crop income, in ruling on Alan's posttrial motions, it clarified that section 2556 left open a path for the parties to obtain adjudication of community assets not previously adjudicated in a judgment.

Alan's arguments in his reply brief do not help him here.

First, Alan argues the parties understood the need to define community assets at the date of separation, citing the April 17, 2018, order and stating the parties had agreed the income received from the crop in the first quarter of 2016 would be a community

25

asset. But reaching an agreement at to the identity of assets that existed on the date of separation is not the same as agreeing that the only value those assets might contribute to the community estate is their value as of the date of separation. Moreover, the citation to the record Alan makes does not support his position that the parties identified a cutoff date for the crop income at the end of the first quarter of 2016. That is, the citation does not support an inference that the parties themselves had agreed the full community value of the crop income would be realized early in 2016, within six months of separation.

Second, he argues that the value of the three assets would not have changed much between the date of separation and trial, that the April 17, 2018, order rested on an acknowledgment that Jennifer should be credited with her share of the community property assets in existence at separation, and that those values should not be ignored as irrelevant to the equal division of the estate. But the April 17, 2018, order provided that the credits, as well as charges and other items identified in the order, would remain "subject to reallocation as between the parties when the court [held] an evidentiary [hearing] on all remaining disputed credits/charges/offsets/claims between the parties" at a later date. Nothing in the order suggests Jennifer or the trial court was absolving Alan of his responsibility to keep records of community assets that would enable the court to trace the actual value those assets contributed to the community estate as sales were made, income was collected, and debts were paid. Nor does it suggest that the court would ignore precedent on the characterization and valuation of commingled assets if Alan failed to meet his tracing burden: once he failed to trace separate and community property portions of a commingled mass, the whole mass would be treated as a community asset and that value divided.

Third, he argues the trial court had a legal duty to render ultimate findings as to the value of the community assets at separation in order to divide assets equally, including to award Alan proper credits for separate payments he made on debts. But to the extent cattle values and debt payments needed to be calculated—be that at the date of

separation or later—the court properly evaluated these assets under *See* and its progeny. Alan commingled the cattle and funds used to pay debts then failed to provide sufficient tracing analysis. These assets were, therefore, properly deemed community in nature. (See *In re Marriage of Braud*, *supra*, 45 Cal.App.4th at pp. 822-823.) To the extent Alan thinks he should get some credit for assets the court could not divide due to a lack of sufficient evidence by both parties—e.g., 2015 crop income—the trial court did not foreclose a future division of that income.

Fourth, in a trial brief he filed in the trial court, Alan suggests that he notified Jennifer that he believed "asset values at separation" were an uncontested issue. The trial brief only states that, "For purposes of dividing property the date of separation of September 15, 2015[,] be used." This, quite simply, doesn't say asset values at the date of separation were uncontested, nor does the possibility that they were uncontested as of that date alter the requirements of section 2552. Similarly, Alan's eleventh-hour augmentation of the record with Jennifer's trial briefs does not convince us the court was required to evaluate assets at the date of separation in contravention of its statutory duties. In one of his motions to augment the record, Alan suggests the trial briefs evidence the parties' "common understanding that the date of separation was the appropriate point in time when the value of such community assets should be established." To begin trial briefs are not evidence or stipulations by parties. Second, the language in Jennifer's trial briefs that Alan points to more accurately reflect that Jennifer understood the valuation could be more accurately calculated closer to the date of trial. For example, in making a proposed valuation of crop income, she looks at post-separation earnings in 2015 and 2016.

Finally, Alan suggests we cannot consider the import of section 2552's dictates to value assets and liabilities "as near as practicable to the time of trial," because Jennifer has raised the requirement for the first time on appeal, and "the consistent facts and procedure employed by the parties and the Superior Court have shown the stipulation of

the parties and concurrence of the Superior Court to identify separation date values of community property assets existing at that time." As we find with respect to the first, second, and third points on this issue in Alan's Reply that we address, we find Alan's suggestion that the court and parties somehow agreed to value the community assets as of the date of separation to be inaccurate based on the record before us. Additionally, to the extent Alan implies we cannot consider the requirements of section 2552 because Jennifer did not raise them below, we note, "it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and *the burden is on an appellant to demonstrate,* on the basis of the record presented to the appellate court, *that the trial court committed an error that justifies reversal of the judgment*." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609, italics added.) Even if Jennifer had made no argument as to the import of section 2552, we would not be required to ignore section 2552 here, and we would not absolve Alan of his burden to demonstrate why it should not apply here.

IV

*Conduct of Proceedings*

Alan raises concerns about how the trial court conducted the trial both in terms of how it sought testimony and documentary evidence from him, and in terms of evidence it did not require Jennifer to submit. He argues that these purported "abuses of discretion" caused the court to be unable to "render ultimate findings about the value of community assets at separation." The argument has no merit.

Alan's burden in arguing that the trial court abused its discretion is high. "A reviewing court should not disturb the exercise of a trial court's discretion unless it appears that there has been a miscarriage of justice. . . . 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of

28

discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

Alan argues the trial court's procedure for obtaining evidence from him was an abuse of discretion. This argument has two primary aspects. First, Alan argues the court violated its legal duty to ensure that evidence of the value of community assets at the date of separation was introduced when it asked Alan questions. Above, we concluded the trial court was not required to make findings about the value of the community property on the date of separation. Thus, this argument fails.

Second, Alan argues the trial court did not properly manage the introduction of exhibits at trial, arguing there is no explanation for why a series of exhibits were skipped, and stating confusion "misled [Alan] to believe that he had evidence in the record on important issues in the case." But we do not have copies of most of the exhibits to which he refers, admitted or otherwise. Without them, we lack the ability to truly assess if their exclusion from evidence caused a miscarriage of justice that would justify us finding an abuse of discretion and reversing the judgment. (See *Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 291 ["Where exhibits are missing we will not presume they would undermine the judgment"].)

Alan's arguments regarding Jennifer's introduction—or nonintroduction of evidence—are similar to his arguments regarding the court's questioning of him and its admission of documents he provided. They fail for similar reasons. First, Alan argues Jennifer did not offer evidence of the value of cash or other assets of the community estate at the date of separation, thereby "preventing proof that financial assets at separation were minimal." But the court was not required to make a valuation of the community assets on the date of separation. Moreover, to the extent a value could be attributed to these assets based on the amount they eventually brought to the community:

(1) the court did value the noncash assets (cattle) and proceeds from their sale, treating the herds as a commingled asset based on the fact Alan commingled them and failed to meet his burden to trace his separate property interest; and (2) the trial court refrained from making specific findings regarding assets for which it determined both parties had failed to present sufficient evidence and noted its continuing jurisdiction regarding those items under section 2556.

V

*Release of Funds*

Alan argues the trial court committed legal error by including the order for the release of what he believes was his share of the sale proceeds from the Road 85 Property to Jennifer in the judgment, and that it committed further error in ordering a release of those funds while this appeal was pending in response to Jennifer's posttrial motion.

Alan's argument is that the trial court's authority to act on matters pending appeal was circumscribed by section 290 and Code of Civil Procedure section 916, subdivision (a), and that an order releasing funds to Jennifer was in excess of that authority. This argument is based on an incomplete analysis of the applicable codes and the nature of Alan's interest in the funds, and we are not persuaded the trial court erred.

Section 290 allows trial courts to enforce judgments made under the Family Code and subjects the trial court's discretion in the enforcement of judgments to the dictates of general statutes governing the enforcement of judgments—i.e. to provisions contained in the Code of Civil Procedure. Code of Civil Procedure section 916, subdivision (a), provides that proceedings in the trial court are stayed pending appeal, however, it carves out some exceptions to the stay, "as provided in Sections 917.1 to 917.9, inclusive."

Under Code of Civil Procedure section 917.1, subdivision (a)(1), "[u]nless an undertaking is given, *the perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order is for . . .* [¶] *[m]oney or the*

30

*payment of money*, whether consisting of a special fund or not, and whether payable by the appellant or another party to the action." (Italics added.)  Here, Alan has made no argument that the judgment involves anything other than the payment of money to Jennifer.  Nor does he make a legally supported argument that the trial court ought to have allowed him to use the portion of proceeds he believed he should have been entitled to, to fund a deposit under Code of Civil Procedure section 995.710.

We find no error in the trial court's order to release funds.

## DISPOSITION

We affirm the judgment and the trial court's postjudgment orders.

_____
HULL, J.

We concur:

_____
EARL, P. J.

_____
RENNER, J.